**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Telephone: (973) 848-4000
Fax: (973) 848-4001
Attorneys for Defendant
L'Oréal USA, Inc.

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN J. TRZASKA,<br><br>    Plaintiff,<br><br>    v.<br><br>L'ORÉAL USA, INC. and L'ORÉAL,<br>S.A.,<br><br>    Defendants. | Civil Action No.<br>2:15-cv-02713-SDW-SCM<br><br><br>**Motion Returnable July 6, 2015**<br>**Oral argument is requested** |

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
### L'ORÉAL USA, INC.'S MOTION TO DISMISS PLAINTIFF'S
### COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)
### FOR FAILURE TO STATE A CLAIM

---

CHRISTOPHER R. CARTON
        Of Counsel and On the Brief
GEORGE BARBATSULY
LAURA SCULLY
        On the Brief

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................1

PROCEDURAL HISTORY AND ALLEGATIONS OF FACT ............................3

    A.    Procedural History...................................................3

    B.    Plaintiff's Employment and Professional Obligations as a Patent Attorney................................................................3

    C.    The Patent Process in Which Plaintiff Was Allegedly Involved .........4

    D.    Plaintiff's Alleged Complaints about the Quality of Invention Disclosures ............................................................6

STANDARD OF REVIEW ..............................................................8

LEGAL ARGUMENT.....................................................................9

    PLAINTIFF'S CEPA CLAIM FAILS AS A MATTER OF LAW ................9

    A.    Plaintiff Has Not Alleged that Violations Had Occurred or Were Imminent ..............................................................10

    B.    The Authorities Relied upon by Plaintiff Are Insufficient to Support a CEPA Claim .................................................15

        1.    The RPCs Cited by Plaintiff Are Not Directed to L'Oréal USA's Business.......................................................16

        2.    The RPCs Cited by Plaintiff Do Not Amount to a Clear Mandate of Public Policy.........................................18

CONCLUSION ..........................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................8, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................8

*Blackburn v. United Parcel Service, Inc.*,
  3 F. Supp. 2d 504 (D.N.J. 1998), *aff'd*, 179 F.3d 81 ...................................11, 12

*Blackburn v. United Parcel Service, Inc.*,
  179 F.3d 81 (3d Cir. 1999) ..........................................................................11, 12

*Capanna v. Tribeca Lending Corporation*,
  No. 06-5314, 2009 WL 900156 (D.N.J. Mar. 31, 2009) ...................................12

**State Cases**

*Barratt v. Cushman & Wakefield of NJ*,
  144 N.J. 120 (1996) ..........................................................................................11

*Chelly v. Knoll Pharmaceuticals*,
  295 N.J. Super. 478 (App. Div. 1996) ..............................................................14

*Colon v. Prudential Insurance Co. of America*,
  2006 WL 507732 (App. Div. Mar. 3, 2006) ......................................................19

*Dzwonar v. McDevitt*,
  177 N.J. 451 (2003) ......................................................................10, 11, 13, 14

*Gibson v. 11 History Lane Operating Co.*,
  2014 WL 700124 (App. Div. Feb. 25, 2014) ..............................................14, 17

*Gonzalez v. City of Camden*,
  No. L-4769-10, 2012 WL 6097076 (App. Div. Dec. 10, 2012).........................14

*Hitesman v. Bridgeway, Inc.*,
  218 N.J. 8 (2014) ......................................................................................passim

*Morris Greitzer & Locks of New Jersey, LLC*,
No. L-3784-01, 2009 WL 2525452 (App. Div. Aug. 20, 2009) ......................17

*Pierce v. Ortho Pharmaceuticals, Corporation*,
84 N.J. 58 (1980) .........................................................................................passim

*Schechter v. N.J. Dep't of Law & Pub. Safety, Div. of Gaming*
*Enforcement*,
327 N.J. Super. 428 (App. Div. 2000)...............................................................13

*Tartaglia v. UBS PaineWebber Inc.*,
197 N.J. 81 (2008) ....................................................................................14, 18

*Warthen v. Toms River Community Memorial Hospital*,
199 N.J. Super. 18, 26 (App. Div. 1985)....................................................19, 20

*Young v. Schering Corp.*,
275 N.J. Super. 221 (App. Div. 1994), *aff'd*, 141 N.J. 16 (1995) ..........12, 13, 14

## State Statutes

*N.J.S.A.* § 34:19-3 ........................................................................................10

*N.J.S.A.* § 34:19-3(c)(1) ..........................................................................15, 16

*N.J.S.A.* §§ 34:19-3(c)(1) and (3).................................................................14

*N.J.S.A.* § 34:19-3(c)(3) .....................................................................15, 18, 20

## Rules

RPC 1.7(b) ......................................................................................................18

RPC 1.8(g) ......................................................................................................18

RPC 4.1 ...........................................................................................................17

## Regulations

37 C.F.R. §§ 11.301, 11.303 .............................................................................4, 17

## PRELIMINARY STATEMENT

Plaintiff Steven R. Trzaska ("Plaintiff"), a former patent attorney whose employment with defendant L'Oréal USA, Inc. ("L'Oréal USA") was terminated, essentially seeks in this Conscientious Employee Protection Act ("CEPA") action to substitute L'Oréal USA's business judgment with his own and vindicate his interpretation of the entire body of patent law. Plaintiff alleges in this action that he disagreed with the hypothetical application of a company policy on yearly patent-filing goals, asserting that at some indeterminate point the policy might lead him to file patent applications he considered at odds with broad attorney-ethics provisions about not clogging the U.S. Patent and Trademark Office with frivolous submissions. CEPA, however, protects employees' reasonable beliefs about employers' violations of law—not how employers lawfully conduct their business.

Plaintiff's own Complaint proves its complete lack of merit. While Plaintiff must, at a minimum, assert that he held an objectively reasonable belief about an actual or imminent violation of a legal authority in order to maintain his CEPA claim, he instead alleges that filing some unidentified patent applications "*would have* necessitated his violation of" general rules governing the patent Bar. Plaintiff does not, and indeed cannot, allege that he or any other attorney in his patent group filed a single frivolous patent—let alone that they were directed to do so. This is fatal to his CEPA claim, especially considering that CEPA plaintiffs who are also

attorneys are necessarily held to a more demanding standard, one that requires them to prove their employer was violating the law. Plaintiff cannot ground a CEPA action on a merely theoretical violation.

Regardless, the attorney-ethics provisions Plaintiff relies upon are not substantive and do not govern L'Oréal USA's business. They are inadequate under recent New Jersey Supreme Court precedent, which confirms that the law, regulation, or clear mandate of public policy allegedly contravened must "identif[y] acceptable and unacceptable practices in the defendant employer's business." Plaintiff cannot meet this standard, as reflected in his own Complaint: "[i]t is the legal and professional responsibility of the reviewing patent attorney or patent agent to make a good faith determination whether the subject matter in an invention disclosure is potentially patentable." If this subjective, general standard were a sufficient basis for a CEPA claim, it would transform this action into a series of mini-litigations on the "patentability" of each invention disclosure that may have come across Plaintiff's desk. CEPA is not and cannot be this broad. Plaintiff's Complaint is unviable and should be dismissed.

**PROCEDURAL HISTORY AND ALLEGATIONS OF FACT**

**A. Procedural History**

On April 16, 2015, Plaintiff filed his Complaint in this action against L'Oréal USA and L'Oréal S.A. (Ex. 1).[1] L'Oréal USA was served with the Complaint on May 1, 2015, and its initial deadline to respond was automatically extended upon request to June 5, 2015, by way of the Clerk's Order dated May 15, 2015. (Clerk's Text Order dated May 15, 2015). On June 5, 2015, L'Oréal USA timely filed this Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**B. Plaintiff's Employment and Professional Obligations as a Patent Attorney**

Plaintiff, a patent attorney, was employed by L'Oréal USA[2] as "head of patents," and at all times relevant to this action, has been a licensed member of the Pennsylvania Bar and admitted to practice before the U.S. Patent and Trademark Office ("USPTO"). (Ex. 1, paras. 8, 12-14). Plaintiff thus has been subject to the Rules of Professional Conduct in effect in the Supreme Court of Pennsylvania's jurisdiction ("Pennsylvania Rules") (Ex. 1, para. 16) as well as to the USPTO

---

[1] "Ex. 1" refers to the Exhibit attached to the Declaration of Christopher R. Carton in Support of Defendant L'Oréal USA, Inc.'s Motion to Dismiss Plaintiff's Complaint, submitted herewith.

[2] Plaintiff alleges that he was also an employee of L'Oréal, S.A. (Ex. 1, para. 8), which L'Oréal USA denies, and regardless, is immaterial to this motion.

rules, codified in federal regulations (together with "Pennsylvania Rules," "RPCs"). (Ex. 1, para. 15). Among other things, the USPTO rules, as cited in Plaintiff's Complaint, state the following:

> "A practitioner shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law or in fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law."

> "A practitioner shall not knowingly: (1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact made to the tribunal by the practitioner."

(Ex. 1, para. 18) (citing 37 C.F.R. §§ 11.301, 11.303). Plaintiff maintains that the "Pennsylvania Rules governing conduct of attorneys provide likewise." (Ex. 1, para. 19).

## C. The Patent Process in Which Plaintiff Was Allegedly Involved

Concerning the patent process at L'Oréal USA, which Plaintiff takes issue with in his Complaint, it "begins when a document known as an 'invention disclosure' is submitted. The invention disclosure is then vetted by the patent team to determine whether the subject matter merits the filing of a patent application." (Ex. 1, para. 32). "An invention disclosure is a document which describes the invention and shows what the potentially innovative/patentable subject matter of the invention is." (Ex. 1, para. 33). According to Plaintiff, "[o]nce the invention disclosure is vetted, an interview is held with the submitting inventor in order to determine whether the subject matter of the invention is novel and unobvious in

view of publicly available prior art relating to the invention." (Ex. 1, para. 5). Additionally, an "internal database of cosmetic formulas is searched to ensure that the subject matter of the invention has not previously been created and/or commercially launched as a product." (Ex. 1, para. 35). Plaintiff acknowledges that "[i]t is the legal and professional responsibility of the reviewing patent attorney or patent agent to make a good faith determination whether the subject matter in an invention disclosure is potentially patentable." (Ex. 1, para. 37).

Plaintiff alleges that during his employment, and beginning as early as 2004, he was subject to a policy requiring a certain number of patent applications to be filed globally on a yearly basis. (Ex. 1, para. 20). "In 2014, Plaintiff's group was given a quota of 40 patent applications to file." (Ex. 1, para. 39). That same year, "there was an internal initiative to improve the quality of patent applications filed . . . ." (Ex. 1, para. 42). Plaintiff maintains that "[a]s a result of this new initiative, fewer invention disclosures were submitted" to his patent group. (Ex. 1, para. 44). He further alleges that "[d]uring the third and fourth quarters of 2014 Plaintiff and his group began receiving urgent messages from top management . . . that the global patent quotas were in danger of not being met." (Ex. 1, para. 45). Regarding the fulfillment of the patent quota allegedly applicable to Plaintiff in particular, Plaintiff asserts that "[a]s of September, 2014" emails were sent "to the heads of laboratories advising that scientists were required to start submitting

invention disclosures on an urgent basis" so that both local as well as global patent quotas could be met. (Ex. 1, para. 48).

Notably, nowhere in his Complaint does Plaintiff allege that any messages or emails were directed to him, as head of patents, or to his group about the particular local patent-quota for their office. (Ex. 1). Indeed, as Plaintiff recognizes in his Complaint, it was the "scientists" or the "submitting inventor" (Ex. 1, paras. 35-36, 48) who were responsible for generating the "invention disclosures," which Plaintiff and his team in turn "vetted" to determine whether filing a patent application for the invention was appropriate. (Ex. 1, paras. 34-35, 37).

### D. Plaintiff's Alleged Complaints about the Quality of Invention Disclosures

Without alleging when, how, to whom, or on what particular basis, Plaintiff asserts that he "and his patent colleagues complained that the quality of invention disclosures was so poor that they did not wish to run afoul of ethical and legal mandates governing their practice as patent attorneys by filing patent applications on these proposed inventions." (Ex. 1, para. 49). Plaintiff, however, does not allege in his Complaint that anyone actually took issue with that expressed potential concern or requested or demanded that he or his team file patent applications for inventions that were not patentable. (Ex. 1). Nor does he allege

that he or his patent team actually refused to file a single patent application that they considered unethical.  (Ex. 1).

Plaintiff further maintains that during a meeting in October 2014, he told "L'Oreal, S.A. CFO [Jean François] Pahin" "that neither he nor the patent attorneys who reported to him were willing to file patent applications that the attorneys believed were not patentable (the subjects of which were at times admitted to by the submitting inventors to be not patentable) solely for the purpose of meeting" his office's patent quota.  (Ex. 1, para. 51).  Significantly, Plaintiff again does not allege that Pahin, or any managerial personnel for that matter, instructed him to do what he was not "willing" to do, namely, file patent applications for inventions that were not "patentable."  (Ex. 1).

In fact, Plaintiff's alleged issue with the quality of the invention disclosures is framed in the conditional: "Plaintiff's filing of patent applications for inventions which were not patentable, as urged by L'Oréal, *would have* necessitated his violation of" the above-quoted provisions of the RPCs.  (Ex. 1, para. 61) (emphasis added).  Plaintiff does not—because he cannot—allege how, when, or by whom he was supposedly so "urged."   Essentially, he has alleged nothing more in his Complaint than a hypothetical quandary: if he were to submit what he considered a frivolous patent application, this would be unethical on his part as a lawyer.

Plaintiff's employment was terminated on December 8, 2014. (Ex. 1, para. 58). While he maintains it was on account of his not being "willing" to file baseless patent applications in theory, should this motion be denied, L'Oréal USA will vigorously contest that purported basis for his discharge.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, a complaint must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" based upon the court's "judicial experience and common sense." *Id.* at 678-79. Plausibility requires "more than a sheer possibility that defendant has acted unlawfully." *Id.* Thus, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Twombly*, 550 U.S. at 555.

Although the court must accept all of the complaint's well-pleaded factual allegations as true, that tenet "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678. Where the well-pleaded facts do not permit the court "to infer more than the mere possibility of

misconduct," the complaint is not sufficient to show "that the pleader is entitled to relief." *Id.* at 679.

The Complaint fails to contain sufficient factual allegations to state a claim that is plausible on its face, and therefore, it should be dismissed.

## LEGAL ARGUMENT

### PLAINTIFF'S CEPA CLAIM FAILS AS A MATTER OF LAW

Having allegedly expressed mere displeasure with a general company policy and company goals, which supposedly could have created tension at some point with broad attorney ethics provisions that do not even apply to L'Oréal USA, Plaintiff simply has no viable CEPA claim. CEPA prohibits employers from taking "any retaliatory action" against an employee who:

> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:
>
> > (1)   is in violation of a law, or a rule or regulation promulgated pursuant to law . . . . ; or
> > (2)   is fraudulent or criminal . . . . ; or
>
> . . . .
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> > (1)   is in violation of a law, or a rule or regulation promulgated pursuant to law . . . . ;
> >
> > (2)   is fraudulent or criminal . . . . ; or

9

        (3)    is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

*N.J.S.A.* § 34:19-3.  To establish a *prima facie* claim under CEPA, a plaintiff must prove that (1) he or she held an objectively reasonably belief that the employer's conduct violated a law, regulation, or clear mandate of public policy; (2) he or she disclosed or threatened to disclose the conduct, or objected to the conduct or refused to participate in it; (3) he or she suffered retaliatory action; and (4) a causal connection exists between the whistleblowing activity and the retaliatory action. *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003).   Plaintiff's allegations are insufficient to establish the first required element, and thus, his Complaint must be dismissed.

## A. Plaintiff Has Not Alleged that Violations Had Occurred or Were Imminent

In his Complaint, Plaintiff only alleges what he "and his patent colleagues . . . did not wish to" do in theory at some unidentifiable time (Ex. 1, para. 49).  As such, he cannot satisfy the first element of a *prima facie* CEPA case, requiring Plaintiff to "set forth facts that would support an objectively reasonable belief that a violation has occurred."  *Id.* at 464.  In determining whether a plaintiff possessed such an objectively reasonable belief, "the trial court must make a threshold

determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff." *Id.*

While the New Jersey Supreme Court has declined to apply a temporal limitation as to CEPA claims, holding that disclosure of past violations of law as well as ongoing violations are protected under the statute, Plaintiff's Complaint does not allege past or ongoing violations. *Barratt v. Cushman & Wakefield of NJ*, 144 N.J. 120, 131-32 (1996); *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 93 n. 4 (3d Cir. 1999). Plaintiff instead essentially alleges the potential for violations in the future. However, in *Blackburn v. United Parcel Service, Inc.*, the District Court stated that "[i]n order for an employee's belief to be considered 'reasonable,' that belief must be such that a 'reasonable lay person would conclude that illegal activity was going on' or at the very least, is imminent." 3 F. Supp. 2d 504, 515 (D.N.J. 1998), *aff'd*, 179 F.3d 81. In rejecting the plaintiff's CEPA claim in *Blackburn*, the Court noted that the plaintiff had

> merely conveyed his concerns, through various memos and conversations, that a law might at some point in the future be violated if certain precautions were not taken or changes not made in the pricing system then being developed. He also questioned, disagreed with, and expressed his level of discomfort about his employer's practices.

*Blackburn*, 179 F.3d at 516. The Court found that the plaintiff never conveyed a reasonable belief that the activities about which he complained "were unlawful such that 'a reasonable lay person' could 'conclude that illegal activity was going

on.'" *Id.* at 516 (quoting *Young v. Schering Corp.*, 275 N.J. Super. 221, 233 (App. Div. 1994), *aff'd*, 141 N.J. 16 (1995).

Following *Blackburn*, in *Capanna v. Tribeca Lending Corporation*, the Court dismissed the plaintiff's CEPA claim on a motion for summary judgment. No. 06-5314, 2009 WL 900156 (D.N.J. Mar. 31, 2009). There, the plaintiff, a mortgage loan underwriter, alleged that she was fired for refusing to underwrite a loan that she believed to be fraudulent. The Court rejected that claim, finding that she had not actually been asked to underwrite the loan. *Id.* at *8. The Court concluded that plaintiff "failed to establish that she had a reasonable belief that [defendant] was engaging in, or about to engage in, fraud . . . . Plaintiff has alleged fraud against [defendant] but she has failed to buttress her claims with any evidence to suggest that illegal activity occurred or was imminent." *Id.* (citing *Blackburn*, 3 F. Supp. 2d at 515).

Here, Plaintiff grounds his CEPA claim on the RPCs. He alleges that complying with L'Oréal's patent-filing quotas would require him to file patents that lacked factual and legal support, in violation of the RPCs. (Ex. 1, paras. 49, 51, 59, 61). However, he does not identify a single patent that was filed or that he was asked to file that would actually violate the RPCs. (Ex. 1, paras. 49, 51, 59, 61). Given Plaintiff's failure to do so, his alleged objections amount to nothing more than a dispute over the reasonableness of L'Oréal's patent-quota policies.

Courts have routinely held that disputes over the merits of an employer's internal policies are not actionable under CEPA. *See Hitesman v. Bridgeway, Inc.*, 218 N.J. 8, 31-32 (2014) ("The statutory elements and the analytical framework set forth in *Dzwonar* distinguish an employee's objection to, or reporting of, an employer's illegal or unethical conduct from a routine dispute in the workplace regarding the relative merits of internal policies and procedures."); *Dzwonar*, 77 N.J. at 467-69 (affirming dismissal of plaintiff's CEPA claim based upon the general administration of union meetings and the union's allegedly inadequate explanation of its actions to its membership); *Schechter v. N.J. Dep't of Law & Pub. Safety, Div. of Gaming Enforcement*, 327 N.J. Super. 428, 432 (App. Div. 2000) (rejecting CEPA claim premised upon "nothing more than a policy dispute between the Division's middle and upper level management concerning the priority to be assigned to exclusion cases"); *Young*, 275 N.J. Super. (where plaintiff objected to his employer's researching of a drug because it was allegedly controversial and unrealistic, concluding that CEPA "was not intended to provide a remedy for wrongful discharge for employees who simply disagree with an employer's decision, where that decision is entirely lawful. Thus, [defendant's] termination of plaintiff's employment, even if it were because of his complaints and disagreements with [its] research decision, does not violate a law, regulation, or a 'clear mandate of public policy'. . . .").

Further undermining Plaintiff's CEPA claim is the fact that he is an attorney. Ordinarily, to establish the first element of a *prima facie* case under CEPA, a plaintiff need not demonstrate an *actual* violation of a law, regulation, or clear mandate of public policy, only an "objectively reasonable belief that a violation has occurred." *Dzwonar*, 177 N.J. at 464. However, in *Tartaglia v. UBS PaineWebber Inc.*, the New Jersey Supreme Court held, in the analogous context of a common law claim for wrongful discharge in violation of public policy under *Pierce v. Ortho Pharmaceuticals, Corporation*, 84 N.J. 58 (1980),[3] that where an attorney-plaintiff premises a *Pierce* claim on a violation of the attorney rules of professional conduct, the plaintiff must demonstrate that the conduct "actually violated" the RPCs. 197 N.J. 81 (2008). The Court reasoned that a higher standard should apply to attorneys "because attorneys should be knowledgeable about the RPCs, and because they have an independent obligation to report violations to the appropriate authorities." *Id.* at 112. *See also Gonzalez v. City of Camden*, No. L-4769-10, 2012 WL 6097076 (App. Div. Dec. 10, 2012) (affirming

---

[3] "CEPA is recognized as a codification of principles articulated in *Pierce*." *Gibson v. 11 History Lane Operating Co.*, 2014 WL 700124, at *6 n.3 (App. Div. Feb. 25, 2014) (citing *Hitesman*, 430 N.J. Super. at 209 n.5). While there are certain differences between CEPA and *Pierce* claims, none are implicated here, *see Chelly v. Knoll Pharmaceuticals*, 295 N.J. Super. 478, 480 n.1 (App. Div. 1996), and courts evaluating CEPA claims have looked to *Pierce* and its progeny for guidance. *E.g.*, *Young*, 275 N.J. Super. at 236-37 (relying on *Pierce*, which the Appellate Division found "instructive," to affirm the dismissal of plaintiff's CEPA claim under *N.J.S.A.* §§ 34:19-3(c)(1) and (3)).

the summary-judgment dismissal of plaintiff-attorney's CEPA claim where he complained that the City of Camden's tort department "had taken the unethical view that the City was not obligated to hire outside counsel for employees in tort and civil rights cases where the City was also a defendant [and] had not agreed to indemnify the employee," but a prior Supreme Court opinion held that this was not ethically mandated). Here, as his own allegations reflect, Plaintiff cannot prove an actual violation of the RPCs. He merely asserts in his Complaint that the "filing of patent applications" for non-patentable inventions "*would have necessitated* his violation of" the RPCs. (Ex. 1, para. 61) (emphasis added). As such, especially given that he is an attorney, Plaintiff fails to satisfy the first required element of his CEPA claim.

## B. The Authorities Relied upon by Plaintiff Are Insufficient to Support a CEPA Claim

In addition to failing to establish that the alleged conduct actually occurred or was imminent, Plaintiff cannot demonstrate that the conduct complained of falls within one of the enumerated categories under CEPA. He does not specify the subsection of CEPA under which he is proceeding, but the two potentially relevant provisions are that the alleged conduct was (i) "in violation of a law, or a rule or regulation promulgated pursuant to law," *N.J.S.A.* § 34:19-3(c)(1); or (ii) "incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." *N.J.S.A.* § 34:19-3(c)(3). The

conduct about which Plaintiff allegedly complained does not fall into either subsection.

**1. The RPCs Cited by Plaintiff Are Not Directed to L'Oréal USA's Business**

As recent New Jersey Supreme Court precedent makes clear, Plaintiff cannot predicate a CEPA claim under *N.J.S.A.* § 34:19-3(c)(1) on the generic RPC provisions referenced in his Complaint, which do not apply to L'Oréal USA. In its 2014 decision in *Hitesman*, the New Jersey Supreme Court noted that "our courts have recognized various sources of authority bearing the required substantial nexus to the plaintiff's claim. In each case, the law, regulation, or other authority held to support a CEPA claim, not only expressed a 'clear mandate of public policy,' but also *identified acceptable and unacceptable practices in the defendant employer's business.*" 218 N.J. at 34 (emphasis added). The *Hitesman* Court concluded that the American Nursing Association Code of Ethics ("ANA Code") "does not constitute a source of law or other authority bearing a 'substantial nexus' to [the employer's] conduct." *Id.* at 36. Specifically, the Court reasoned that the ANA Code "expresses the nursing profession's commitment to sound patient care," but "includes no general standard for infection control in a nursing home, much less specific direction on how [the defendant] should have treated its patients' illnesses." *Id.* at 36-37 (citations omitted).

Similarly, in *Gibson v. 11 History Lane Operating Co.*, 2014 WL 700124, the Appellate Division recently held that a nurse's disagreement with a long-term care facility's chart-checking policy, which called for her to transcribe another nurse's written physician's order, did not support an objectively reasonable belief that a law, rule, or regulation was violated where the nurse claimed that the ANA Code and New Jersey Administrative Code were implicated. *Id.* at *9-10. The Court explained that "because the ANA Code does not apply to the facility nor does it establish a standard regarding patient care that [defendant] was required to provide its patients, the ANA Code does not adequately define 'improper quality of patient care' to bolster a CEPA claim." *Id.* at *10.

Here, just as in *Hiteman* and *Gibson*, the RPC provisions Plaintiff cites are not directed to L'Oréal USA in its business. Rather, they are directed to Plaintiff in his practice as an attorney. They include no standards governing the filing of patents and no specific direction about how Plaintiff should have prepared any particular patent applications. They only require generally that a practitioner not file frivolous patent applications or knowingly make false or misleading statements of fact or law to a tribunal. 37 CFR §§ 11.301, 11.303. *See also* PA RPC 4.1.[4]

---

[4] Thus, this case is distinguishable from the unreported decision of *Morris v. Greitzer & Locks of New Jersey, LLC*, in which the court allowed a plaintiff-attorney's CEPA claims to go forward based on RPCs. No. L-3784-01, 2009 WL 2525452, at *9 (App. Div. Aug. 20, 2009). The defendants in *Morris* were lawyers and a law firm subject to RPCs, unlike Defendant L'Oréal USA here.

Indeed, Plaintiff alleges in his Complaint that "whether the subject matter in an invention disclosure is potentially patentable" depends on Plaintiff's "good faith determination." (Ex. 1, para. 37). Because the RPCs upon which Plaintiff relies do not specifically identify acceptable and unacceptable practices in L'Oréal USA's business, they are insufficient under *Hitesman* to support a claim that L'Oréal USA's conduct in setting alleged patent quotas violated a law, rule, or regulation.

## 2. The RPCs Cited by Plaintiff Do Not Amount to a Clear Mandate of Public Policy

The RPCs Plaintiff references in his Complaint also do not represent a "clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." *N.J.S.A.* § 34:19-3(c)(3). In *Tartaglia*, the New Jersey Supreme Court allowed a *Pierce* claim to go forward based on New Jersey RPC 1.7(b), related to conflicts of interest, because it is rooted in the basic duties of a lawyer. 197 N.J. at 110. However, the Court declined to consider as a general

---

Moreover, the RPC at issue in *Morris*, RPC 1.8(g), prohibits a lawyer who represents two or more clients from "participat[ing] in making an aggregate settlement of the claims of or against the clients . . . unless each client gives informed consent after a consultation that shall include disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.'" 2009 WL 2525452, at *9 (App. Div. Aug. 20, 2009). This rule provides a discrete standard for lawyers to follow in the conduct of settlements, in contrast to the RPCs cited by Plaintiffs which do not provide any specific standards governing the filing of patent applications.

matter whether RPCs constitute a clear mandate of public policy. *Id.* Other courts have held that professional codes of ethics do not automatically rise to the level of a clear mandate of public policy. For example, in *Pierce*, a doctor refused to continue a medical project because she considered it controversial and believed it presented an unnecessary risk, in violation of the Hippocratic Oath. The New Jersey Supreme Court held that she did not have a viable claim against the employer based on contravention of a clear mandate of public policy:

> In certain instances, a professional code of ethics may contain an expression of public policy. However, not all such sources express a clear mandate of public policy. For example, a code of ethics designed to serve only the interests of a profession or an administrative regulation concerned with technical matters probably would not be sufficient.

*Pierce*, 84 N.J at 72. *Accord Colon v. Prudential Insurance Co. of America*, 2006 WL 507732 (App. Div. Mar. 3, 2006) ("a professional code of ethics does not contain an expression of public policy if it only serves the interest of a profession").

Similarly, in *Warthen v. Toms River Community Memorial Hospital*, a nurse refused to follow orders to provide medical treatment to a terminally ill patient and relied on a provision in the Code for Nurses on the "'respect for human dignity and the uniqueness of the client unrestricted by considerations of social or economic status personal attributes, or the nature of health problems.'" 199 N.J. Super. 18, 26 (App. Div. 1985). The *Warthen* court rejected her *Pierce* claim, concluding:

> [T]he passage cited by plaintiff defines a standard of conduct beneficial only to the individual nurse and not to the public at large. The overall purpose of the language cited by plaintiff is to preserve human dignity; however, it should not be at the expense of the patient's life or contrary to the family's wishes.

*Id.* at 27.

In this case, the RPCs cited by Plaintiff define a standard of conduct beneficial only to patent attorneys and Pennsylvania attorneys—not to the public at large. Unlike *Tartaglia*, where the RPC at issue was designed to protect the public by specifying the procedures that need to be followed when an attorney seeks a waiver of a concurrent conflict of interest, the USPTO and Pennsylvania Rules are designed mainly to further the efficient prosecution of patent applications by ensuring non-frivolous patent applications and truthful statements in patent proceedings. It cannot be said that these RPCs represent a "clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." *Cf. N.J.S.A.* § 34:19-3(c)(3). For this additional reason, Plaintiff's CEPA claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant L'Oréal USA, Inc. respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

**K&L GATES LLP**
Attorneys for Defendant
L'Oréal USA, Inc.

s/ Christopher R. Carton
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Telephone: (973) 848-4000
Fax: (973) 848-4001
Email: christopher.carton@klgates.com

Dated: June 5, 2015