**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Telephone: (973) 848-4000
Fax: (973) 848-4001
Attorneys for Defendant
L'Oréal USA, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEVEN J. TRZASKA,<br><br>        Plaintiff,<br><br>    v.<br><br>L'ORÉAL USA, INC. and L'ORÉAL, S.A.,<br><br>        Defendants. | Civil Action No.<br>2:15-cv-02713-SDW-SCM<br><br><br>**Motion Returnable August 17, 2015**<br>**Oral argument is requested** |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT L'ORÉAL USA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM

---

CHRISTOPHER R. CARTON
        Of Counsel and On the Brief
GEORGE BARBATSULY
LAURA SCULLY
        On the Brief

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................1

PROCEDURAL HISTORY AND ALLEGATIONS OF FACT ............................4

    A.    Procedural History and the First Amended Complaint ........................4

    B.    Plaintiff's Employment and Professional Obligations as a Patent Attorney ...............................................................5

    C.    The Patent Process in Which Plaintiff Was Allegedly Involved .........6

    D.    Plaintiff's Alleged Complaints about the Quality of Invention Disclosures ...........................................................9

STANDARD OF REVIEW .............................................................12

LEGAL ARGUMENT ..................................................................13

    PLAINTIFF'S CEPA CLAIM FAILS AS A MATTER OF LAW .............13

    A.    Plaintiff Has Not Alleged that Violations Had Occurred or Were Imminent ...............................................................14

    B.    The Authorities Relied upon by Plaintiff Are Insufficient to Support a CEPA Claim ...................................................20

        1.    The RPCs Cited by Plaintiff Are Not Directed to L'Oréal USA's Business .......................................................21

        2.    The RPCs Cited by Plaintiff Do Not Amount to a Clear Mandate of Public Policy .......................................23

CONCLUSION ......................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................15

*Blackburn v. United Parcel Service, Inc.*,
   3 F. Supp. 2d 504 (D.N.J. 1998), *aff'd*, 179 F.3d 81 .........................................18

*Blackburn v. United Parcel Service, Inc.*,
   179 F.3d 81 (3d Cir. 1999) ...........................................................................18, 19

*Capanna v. Tribeca Lending Corp.*,
   No. 06-5314, 2009 WL 900156 (D.N.J. Mar. 31, 2009) ....................................19

**State Cases**

*Barratt v. Cushman & Wakefield of NJ*,
   144 N.J. 120 (1996) ...........................................................................................18

*Chelly v. Knoll Pharmaceuticals*,
   295 N.J. Super. 478 (App. Div. 1996)................................................................21

*Colon v. Prudential Ins. Co. of Am.*,
   2006 WL 507732 (App. Div. Mar. 3, 2006)......................................................27

*Dzwonar v. McDevitt*,
   177 N.J. 451 (2003) .....................................................................................passim

*Gibson v. 11 History Lane Operating Co.*,
   2014 WL 700124 (App. Div. Feb. 25, 2014) ...............................................21, 25

*Gonzalez v. City of Camden*,
   No. L-4769-10, 2012 WL 6097076 (App. Div. Dec. 10, 2012)..........................22

*Hitesman v. Bridgeway, Inc.*,
   218 N.J. 8 (2014) .........................................................................................passim

*Morris Greitzer & Locks of New Jersey, LLC*,
  No. L-3784-01, 2009 WL 2525452  (App. Div. Aug. 20, 2009) ......................25

*Pierce v. Ortho Pharmaceuticals Corp.*,
  84 N.J. 58 (1980) .......................................................................21, 27

*Schechter v. N.J. Dep't of Law & Pub. Safety, Div. of Gaming
  Enforcement*,
  327 N.J. Super. 428 (App. Div. 2000) ..............................................20

*Tartaglia v. UBS PaineWebber Inc.*,
  197 N.J. 81 (2008) .....................................................................21, 26

*Warthen v. Toms River Community Memorial Hospital*,
  199 N.J. Super. 18, 26 (App. Div. 1985) ............................................27

*Young v. Schering Corp.*,
  275 N.J. Super. 221 (App. Div. 1994), *aff'd*, 141 N.J. 16 (1995) ...............19, 21

**State Statutes**

*N.J.S.A.* § 34:19-3 ......................................................................16

*N.J.S.A.* §§ 34:19-3(a)(1) and (a)(2) .................................................23

*N.J.S.A.* § 34:19-3(c)(1) ...........................................................23, 24

*N.J.S.A.* §§ 34:19-3(c)(1) and (3).....................................................21

*N.J.S.A.* §§ 34:19-3(c)(1), (c)(2), and (c)(3) .......................................23

*N.J.S.A.* § 34:19-3(c)(3) .........................................................24, 26, 28

**Rules**

RPC 1.7(b) .................................................................................26

RPC 1.8(g) .................................................................................25

RPC 4.1 ....................................................................................25

**Regulations**

37 C.F.R. §§ 11.301, 11.303 ...........................................................9, 25

# PRELIMINARY STATEMENT

Ironically, in pursuing this action under the Conscientious Employee Protection Act ("CEPA") based on general attorney-ethics rules, Plaintiff Steven R. Trzaska ("Plaintiff"), an attorney, has breached his own ethical obligations, among other legal obligations. Confronted with the initial motion to dismiss, Plaintiff amended his Complaint and attached to the revised version three new Exhibits—confidential and privileged communications to and/or from Defendant L'Oréal USA, Inc.'s in-house counsel (and Plaintiff's direct report), which Plaintiff knowingly and improperly diverted from the company months before his discharge.[1] Flouting his professional obligations, Plaintiff failed to limit his disclosure of such communications to what was reasonably necessary, filing his First Amended Complaint wholly unredacted and unsealed and without any prior notice to his former client.

Despite the shocking nature of this conduct, the addition of those three Exhibits (and excerpts therefrom)—the only substantive change to Plaintiff's

---

[1] Plaintiff's theft and public disclosure of his client's privileged communications violates his most basic professional responsibility obligations. (*See* Rule 1.6 of the Pennsylvania Rules of Professional Conduct and Section 11.106 of the United States Patent and Trademark Office Rules of Professional Conduct). This conduct also constitutes a flagrant breach of Plaintiff's employment-related agreements and policies, several of which include strict confidentiality provisions. Lastly, Plaintiff's actions potentially violate the New Jersey Computer Related Offenses Act, N.J.S.A. 2A:38A-1, et seq., which, *inter alia*, prohibits "[t]he purposeful or knowing, and unauthorized . . . taking . . . of any data . . . existing internally or externally to a computer, computer system or computer network". On top of these violations, Plaintiff also failed to disclose his possession of internal e-mail correspondence in his F.R.C.P. 26(a) disclosures.

Complaint—has not made his Complaint any stronger.  Indeed, it still fails to state a viable CEPA claim on a number of different fronts.

First, Plaintiff has not asserted any actual or ongoing violation of law or policy.  He alleges only that he disagreed with the hypothetical application of an alleged company policy on yearly patent-filing goals, asserting that at some indeterminate point the policy *might* lead him or other lawyers on his team to file patent applications he considered at odds with broad attorney-ethics provisions about not clogging the U.S. Patent and Trademark Office with frivolous submissions.

In order to plead a viable CEPA claim, Plaintiff must assert that he held an objectively reasonable belief about an actual or imminent violation of law or public policy.  Even after amendment, Plaintiff has not met this standard. Plaintiff still does not, and indeed cannot, allege that he or any other attorney in his patent group filed a single frivolous patent—let alone that they were directed by any Defendant to do so.  Nor does he assert that he refused to file a single patent application on ethical grounds.  The best he can do is to allege that filing at some indeterminate time, some unidentified patent applications "*would have* necessitated his violation of" general rules governing the patent bar.  But "would have" and "could have" and "should have" do not a legal claim make.  CEPA plaintiffs who, like Plaintiff, are attorneys are necessarily held to a more demanding standard, one that requires

them to prove their employer was actually violating the law. Plaintiff cannot ground a CEPA action on a merely theoretical violation.

Indeed, even if Defendant had directed Plaintiff to engage in conduct that contravened his professional obligations—which it did not—his CEPA claim would still fail, since the attorney-ethics provisions on which he relies upon are not substantive and do not govern L'Oréal USA's conduct. It is clear under recent New Jersey Supreme Court precedent that the law, regulation, or clear mandate of public policy allegedly contravened <u>must</u> "identif[y] acceptable and unacceptable practices in the defendant employer's business." Put simply, L'Oréal, a beauty company, is not governed by any ethics rules governing the legal profession.[2] As Plaintiff concedes: "[i]t is the legal and professional responsibility of *the reviewing patent attorney or patent agent* to make a good faith determination whether the subject matter in an invention disclosure is potentially patentable." Determining whether Plaintiff carried out this obligation would transform this action into a series of mini-litigations on the "patentability" of each invention disclosure that may have come across Plaintiff's desk. CEPA is not and cannot be this broad. The limited question is whether Plaintiff reasonably believed that Defendant had engaged or was engaging in unlawful conduct. Since Plaintiff has not made such

---

[2] As a Delaware company with a principal place of business in New York, L'Oreal is most certainly not governed by the attorney ethics rules of the Commonwealth of Pennsylvania.

an allegation in either version of his Complaint, it is abundantly clear that he did not.  For this reason and those set forth below, Plaintiff's Amended Complaint is not viable and should be dismissed without further leave to amend.

## PROCEDURAL HISTORY AND ALLEGATIONS OF FACT

### A. Procedural History and the First Amended Complaint

On April 16, 2015, Plaintiff filed his Complaint in this action against L'Oréal USA and L'Oréal S.A.  L'Oréal USA was served with the Complaint on May 1, 2015, and its initial deadline to respond was automatically extended upon request to June 5, 2015.  On June 5, 2015, L'Oréal USA filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, returnable on July 6, 2015.[3]

On June 24, 2015, Plaintiff filed—unredacted and unsealed—a First Amended Complaint, with Exhibits A through D.  (Am. Cmplt.).[4]  The only substantive modifications to Plaintiff's pleading for purposes of his CEPA claim were to attach three more Exhibits and essentially copy and paste their contents into the body text of his First Amended Complaint.  (Am. Cmplt.).  All three of

---

[3] Plaintiff submitted pursuant to Local Rule 7.1(d) a request for an automatic adjournment of this return date to July 20, 2015, thereby moving his opposition deadline from June 22, 2015 to July 6, 2015. The court docket presently reflects, however, that his request was never formally granted by the Clerk.

[4] "Am. Cmplt." refers to the First Amended Complaint filed in this action on June 24, 2015, appearing as Document 10 on the court's docket.  "Ex." refers to the exhibits attached to the First Amended Complaint, appearing as Document 10.1 on the court's docket.

these Exhibits are internal L'Oréal USA emails which Plaintiff took from the company. (Am. Cmplt., Exs. A-C). The communications are to and/or from its in-house attorneys, including Plaintiff, regarding L'Oréal USA's patent process and strategy, and as such, are confidential and privileged. (Am. Cmplt., paras. 33, 36-37, Exs. A-C). In fact, Exhibit A is even marked "CONFIDENTIAL / LEGAL OPINION / ATTORNEY-CLIENT PRIVILEGED." (Am. Cmplt., Ex. A).

L'Oréal USA's time to respond to this amended pleading was automatically extended to July 22, 2015 at its request. On July 22, 2015, L'Oréal USA timely filed this Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, returnable on August 17, 2015.

## B. Plaintiff's Employment and Professional Obligations as a Patent Attorney

Plaintiff, a patent attorney, was employed by L'Oréal USA[5] as "head of patents," and at all times relevant to this action, has been a licensed member of the Pennsylvania Bar and admitted to practice before the U.S. Patent and Trademark Office ("USPTO"). (Am. Cmplt., paras. 13-15). Plaintiff thus has been subject to the Rules of Professional Conduct in effect in the Supreme Court of Pennsylvania's jurisdiction ("Pennsylvania Rules") (Am. Cmplt., para. 17) as well

---

[5] Plaintiff alleges that he was also an employee of L'Oréal, S.A. (Am. Cmplt., para. 9), which L'Oréal USA denies, and regardless, is immaterial to this motion.

as to the USPTO rules, codified in federal regulations (together with "Pennsylvania Rules," "RPCs"). (Am. Cmplt., para. 16). Among other things, the USPTO rules, as cited in Plaintiff's Amended Complaint, state the following:

> A practitioner shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law or in fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law.

> A practitioner shall not knowingly: (1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact made to the tribunal by the practitioner.

(Am. Cmplt., para. 19) (citing 37 C.F.R. §§ 11.301, 11.303). Plaintiff maintains that the "Pennsylvania Rules governing conduct of attorneys provide likewise." (Am. Cmplt., para. 20).

## C. The Patent Process in Which Plaintiff Was Allegedly Involved

Concerning the patent process at L'Oréal USA, which Plaintiff takes issue with in his Amended Complaint, it "begins when a document known as an 'invention disclosure' is submitted. The invention disclosure is then vetted by the patent team to determine whether the subject matter merits the filing of a patent application." (Am. Cmplt., para. 38). "An invention disclosure is a document which describes the invention and shows what the potentially innovative/patentable subject matter of the invention is." (Am. Cmplt., para. 39). According to Plaintiff, "[o]nce the invention disclosure is vetted, an interview is held with the submitting inventor in order to determine whether the subject matter of the

6

invention is novel and unobvious in view of publicly available prior art relating to the invention." (Am. Cmplt., para. 41). Additionally, an "internal database of cosmetic formulas is searched to ensure that the subject matter of the invention has not previously been created and/or commercially launched as a product." (Am. Cmplt., para. 41). Plaintiff acknowledges that "[i]t is the legal and professional responsibility of the reviewing patent attorney or patent agent to make a good faith determination whether the subject matter in an invention disclosure is potentially patentable." (Am. Cmplt., para. 43).

Plaintiff alleges that during his employment, and beginning as early as 2004, he was subject to a policy requiring a certain number of patent applications to be filed globally on a yearly basis. (Am. Cmplt., para. 21). "In 2014, Plaintiff's group was given a quota of 40 patent applications to file." (Am. Cmplt., para. 45). That same year, "there was an internal initiative to improve the quality of patent applications being filed . . . ." (Am. Cmplt., para. 48). Plaintiff maintains that "[a]s a result of this new initiative, fewer invention disclosures were submitted" to his patent group. (Am. Cmplt., para. 50). He further alleges that "[d]uring the third and fourth quarters of 2014 Plaintiff and his group began receiving urgent messages from top management . . . that the global patent quotas were in danger of not being met." (Am. Cmplt., para. 51).

Regarding the fulfillment of the patent goal allegedly applicable to Plaintiff in particular, he asserts that "[a]s of September, 2014" emails were sent "to the heads of laboratories advising that scientists were required to start submitting invention disclosures on an urgent basis" so that both local as well as global patent goals could be met. (Am. Cmplt., para. 54). Plaintiff alleges that by September 2014 "there had been less [sic] than 15 applications filed by the L'Oréal USA research organization, with some ten potential filings in preparation or under review for patentability." (Am. Cmplt., para. 53). By October 3, 2014, however, ██████████████████████████████████████████████████████████ ██████████████████████████████ (Am. Cmplt., para. 35). Thus, by Plaintiff's own allegations, his team was only 5 patent filings away from fulfilling its goal and had 3 more months to do so.

Furthermore, one of the very people Plaintiff claims pushed the patent team to meet its patent goal, Mr. Stephan Habif, "L'Oréal head of research for the Americas" and a member of "top management," expressly acknowledged the need to fulfill legal requirements in reaching this target. (Am. Cmplt., para. 54). In the privileged and confidential email from Mr. Habif, which Plaintiff publically disclosed, Mr. Habif identified ██████████████████████████████ (Am. Cmplt., para. 35). Plaintiff's own Exhibit thereby demonstrates L'Oréal USA's

commitment to submitting legally sound patent filings and undermines his theory of this case.

### D. Plaintiff's Alleged Complaints about the Quality of Invention Disclosures

According to Plaintiff's Amended Complaint, one of his attorney colleagues did not complain *with* him; she complained *to* him.  Plaintiff asserts that he "and his patent colleagues complained that the quality of invention disclosures was so poor that they did not wish to run afoul of ethical and legal mandates governing their practice as patent attorneys by filing patent applications on these proposed inventions." (Am. Cmplt., para. 55).  In an attempt to identify what exactly these supposed complaints were, however, Plaintiff attached an email from Patricia Rocha, "one of [L'Oréal USA's] in-house Patent Attorneys," to Plaintiff and two others, copying "L'Oréal, S.A. CFO [Jean-François] Pahin." (Am. Cmplt., para. 56 & Ex. B).  In this privileged and confidential message Plaintiff took from his former employer, Ms. Rocha complains, ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ (Am. Cmplt., Ex. B) (emphasis added).  Like Plaintiff, she was not complaining about having to file what she deemed inferior patent applications, but

the mere possibility of submitting such filings given the deficiencies she was observing in the underlying paperwork.

Similarly, in yet a third confidential and privileged email Plaintiff publicly disclosed, Ms. Rocha complained to Plaintiff and Denis Boulard, "Global Director of Patents" (Am. Cmplt., para. 36), ███████████████████████ ████████████████████████████████████ ███████████████████████ (Am. Cmplt., Ex. C). Plaintiff thus attempts to bolster his claim by referencing complaints from another patent attorney directed, among others, *to himself as "head of patents,"* as if he was in no way responsible for the patent process that he now seeks to challenge.[6]

Even with these Exhibits, Plaintiff still does not allege in his Amended Complaint that anyone actually took issue with any expressed potential concern from a patent attorney, or requested or demanded that he or his team file patent applications for inventions that were not patentable. (Am. Cmplt.). Nor does he allege that he or his patent team actually refused to file a single patent application that they considered unethical. (Am. Cmplt.).

---

[6] It is worth noting that, despite Ms. Rocha's vocal complaints, she was not terminated or otherwise penalized. In the height of irony, Plaintiff chose to selectively redact portions of the email correspondence demonstrating the Company's serious response to Ms. Rocha's concerns—while publically disclosing the underlying complaint despite its clear and conspicuous markings as "Attorney Client Privileged."

As to his own alleged complaint, Plaintiff maintains that during a meeting in October 2014, he told Mr. Pahin "that neither he nor the patent attorneys who reported to him were willing to file patent applications that the attorneys believed were not patentable (the subjects of which were at times admitted to by the submitting inventors to be not patentable) solely for the purpose of meeting" his office's patent quota. (Am. Cmplt., para. 57). Significantly, Plaintiff does not allege that Pahin, or any managerial personnel for that matter, instructed him to do what he was not "willing" to do. (Am. Cmplt.).

In fact, Plaintiff's alleged issue with the quality of the invention disclosures is framed in the conditional: "Plaintiff's filing of patent applications for inventions which were not patentable, as urged by L'Oréal, *would have* necessitated his violation of" the above-quoted provisions of the RPCs. (Am. Cmplt., para. 69) (emphasis added). Plaintiff does not—because he cannot—allege how, when, or by whom he was supposedly so "urged." Essentially, he has alleged nothing more in his Amended Complaint than a hypothetical quandary: if he were to submit what he considered a frivolous patent application, this would be unethical on his part as a lawyer.

Plaintiff's employment was terminated on December 8, 2014. (Am. Cmplt., para. 70). While he maintains it was on account of his not being "willing" to file

baseless patent applications in theory, should this motion be denied, L'Oréal USA will vigorously contest that purported basis for his discharge.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, a complaint must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" based upon the court's "judicial experience and common sense." *Id.* at 678-79. Plausibility requires "more than a sheer possibility that defendant has acted unlawfully." *Id.* Thus, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Twombly*, 550 U.S. at 555.

Although the court must accept all of the complaint's well-pleaded factual allegations as true, that tenet "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678. Where the well-pleaded facts do not permit the court "to infer more than the mere possibility of misconduct," the complaint is not sufficient to show "that the pleader is entitled to relief." *Id.* at 679.

The Amended Complaint fails to contain sufficient factual allegations to state a claim that is plausible on its face, and therefore, it should be dismissed.

## LEGAL ARGUMENT

**PLAINTIFF'S CEPA CLAIM FAILS AS A MATTER OF LAW**

Having allegedly expressed mere displeasure with a general company policy and company goals, which supposedly could have created tension at some point with broad attorney ethics provisions that do not even apply to L'Oréal USA, Plaintiff simply has no viable CEPA claim. CEPA prohibits employers from taking "any retaliatory action" against an employee who:

    a.  Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

        (1)    is in violation of a law, or a rule or regulation promulgated pursuant to law . . . . ; or

        (2)    is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

    . . . .

    c.  Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

        (1)    is in violation of a law, or a rule or regulation promulgated pursuant to law . . . . ;

(2)    is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

(3)    is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

*N.J.S.A.* § 34:19-3.  To establish a *prima facie* claim under CEPA, a plaintiff must prove that (1) he or she held an objectively reasonably belief that the employer's conduct violated a law, regulation, or clear mandate of public policy; (2) he or she disclosed or threatened to disclose the conduct, or objected to the conduct or refused to participate in it; (3) he or she suffered retaliatory action; and (4) a causal connection exists between the whistleblowing activity and the retaliatory action. *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003).  Plaintiff's allegations are insufficient to establish the first required element, and his Amended Complaint must accordingly be dismissed.

### A. Plaintiff Has Not Alleged that Violations Had Occurred or Were Imminent

In his Amended Complaint, Plaintiff only alleges what he "and his patent colleagues . . . did not wish to" do in theory at some unidentifiable time (Am. Cmplt., para. 55).  As such, he cannot satisfy the first element of a *prima facie* CEPA case, requiring Plaintiff to "set forth facts that would support an objectively

reasonable belief that a violation has occurred." *Id.* at 464. In determining whether a plaintiff possessed such an objectively reasonable belief, "the trial court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff." *Id.*

While the New Jersey Supreme Court has declined to apply a temporal limitation as to CEPA claims, holding that disclosure of past violations of law as well as ongoing violations are protected under the statute, Plaintiff's Amended Complaint does not allege past or ongoing violations. *Barratt v. Cushman & Wakefield of NJ*, 144 N.J. 120, 131-32 (1996); *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 93 n. 4 (3d Cir. 1999). Plaintiff instead essentially alleges the potential for violations in the future. However, in *Blackburn v. United Parcel Service, Inc.*, the District Court stated that "[i]n order for an employee's belief to be considered 'reasonable,' that belief must be such that a 'reasonable lay person would conclude that illegal activity was going on' or at the very least, is imminent." 3 F. Supp. 2d 504, 515 (D.N.J. 1998), *aff'd*, 179 F.3d 81. In rejecting the plaintiff's CEPA claim in *Blackburn*, the Court noted that the plaintiff had

> merely conveyed his concerns, through various memos and conversations, that a law might at some point in the future be violated if certain precautions were not taken or changes not made in the pricing system then being developed. He also questioned, disagreed with, and expressed his level of discomfort about his employer's practices.

*Blackburn*, 179 F.3d at 516. The Court found that the plaintiff never conveyed a reasonable belief that the activities about which he complained "were unlawful such that 'a reasonable lay person' could 'conclude that illegal activity was going on.'" *Id.* at 516 (quoting *Young v. Schering Corp.*, 275 N.J. Super. 221, 233 (App. Div. 1994), *aff'd*, 141 N.J. 16 (1995).

Following *Blackburn*, in *Capanna v. Tribeca Lending Corporation*, the Court dismissed the plaintiff's CEPA claim on a motion for summary judgment. No. 06-5314, 2009 WL 900156 (D.N.J. Mar. 31, 2009). There, the plaintiff, a mortgage loan underwriter, alleged that she was fired for refusing to underwrite a loan that she believed to be fraudulent. The Court rejected that claim, finding that she had not actually been asked to underwrite the loan. *Id.* at *8. The Court concluded that plaintiff "failed to establish that she had a reasonable belief that [defendant] was engaging in, or about to engage in, fraud . . . . Plaintiff has alleged fraud against [defendant] but she has failed to buttress her claims with any evidence to suggest that illegal activity occurred or was imminent." *Id.* (citing *Blackburn*, 3 F. Supp. 2d at 515).

Here, Plaintiff grounds his CEPA claim on the RPCs. He alleges that complying with L'Oréal's patent-filing goals would require him to file patents that lacked factual and legal support, in violation of the RPCs. (Am. Cmplt., paras. 55, 57, 65, 69). However, he does not identify a single patent that was filed or that he

was asked to file that would actually violate the RPCs. (Am. Cmplt., paras. 55, 57, 65, 69). Given Plaintiff's failure to do so, his alleged objections amount to nothing more than a dispute over the reasonableness of L'Oréal's patent-quota policies. Plaintiff's own Exhibit B even confirms that any violation of the RPCs was not imminent. While Plaintiff's patent group was expected to file 40 patents in 2014 (Am. Cmplt., para. 45), by October 3, 2014, ███████████████████████████ ████████████████████ (Am. Cmplt., para. 35). Plaintiff's team was only 5 patent filings away from meeting its goal 3 months later.

Courts have routinely held that disputes over the merits of an employer's internal policies are not actionable under CEPA. *See Hitesman v. Bridgeway, Inc.*, 218 N.J. 8, 31-32 (2014) ("The statutory elements and the analytical framework set forth in *Dzwonar* distinguish an employee's objection to, or reporting of, an employer's illegal or unethical conduct from a routine dispute in the workplace regarding the relative merits of internal policies and procedures."); *Dzwonar*, 77 N.J. at 467-69 (affirming dismissal of plaintiff's CEPA claim based upon the general administration of union meetings and the union's allegedly inadequate explanation of its actions to its membership); *Schechter v. N.J. Dep't of Law & Pub. Safety, Div. of Gaming Enforcement*, 327 N.J. Super. 428, 432 (App. Div. 2000) (rejecting CEPA claim premised upon "nothing more than a policy dispute between the Division's middle and upper level management concerning the

priority to be assigned to exclusion cases"); *Young*, 275 N.J. Super. (where plaintiff objected to his employer's researching of a drug because it was allegedly controversial and unrealistic, concluding that CEPA "was not intended to provide a remedy for wrongful discharge for employees who simply disagree with an employer's decision, where that decision is entirely lawful. Thus, [defendant's] termination of plaintiff's employment, even if it were because of his complaints and disagreements with [its] research decision, does not violate a law, regulation, or a 'clear mandate of public policy'. . . .").

Further undermining Plaintiff's CEPA claim is the fact that he is an attorney. Ordinarily, to establish the first element of a *prima facie* case under CEPA, a plaintiff need not demonstrate an *actual* violation of a law, regulation, or clear mandate of public policy, only an "objectively reasonable belief that a violation has occurred." *Dzwonar*, 177 N.J. at 464. However, in *Tartaglia v. UBS PaineWebber Inc.*, the New Jersey Supreme Court held, in the analogous context of a common law claim for wrongful discharge in violation of public policy under *Pierce v. Ortho Pharmaceuticals, Corporation*, 84 N.J. 58 (1980),[7] that where an

---

[7] "CEPA is recognized as a codification of principles articulated in *Pierce.*" *Gibson v. 11 History Lane Operating Co.*, 2014 WL 700124, at *6 n.3 (App. Div. Feb. 25, 2014) (citing *Hitesman*, 430 N.J. Super. at 209 n.5). While there are certain differences between CEPA and *Pierce* claims, none are implicated here, *see Chelly v. Knoll Pharmaceuticals*, 295 N.J. Super. 478, 480 n.1 (App. Div. 1996), and courts evaluating CEPA claims have looked to *Pierce* and its progeny for guidance. *E.g.*, *Young*, 275 N.J. Super. at 236-37 (relying on *Pierce*, which the Appellate Division found "instructive," to affirm the dismissal of plaintiff's CEPA claim under *N.J.S.A.* §§ 34:19-3(c)(1) and (3)).

attorney-plaintiff premises a *Pierce* claim on a violation of the attorney rules of professional conduct, the plaintiff must demonstrate that the conduct "actually violated" the RPCs. 197 N.J. 81 (2008). The Court reasoned that a higher standard should apply to attorneys "because attorneys should be knowledgeable about the RPCs, and because they have an independent obligation to report violations to the appropriate authorities." *Id.* at 112. *See also Gonzalez v. City of Camden*, No. L-4769-10, 2012 WL 6097076 (App. Div. Dec. 10, 2012) (affirming the summary-judgment dismissal of plaintiff-attorney's CEPA claim where he complained that the City of Camden's tort department "had taken the unethical view that the City was not obligated to hire outside counsel for employees in tort and civil rights cases where the City was also a defendant [and] had not agreed to indemnify the employee," but a prior Supreme Court opinion held that this was not ethically mandated). Here, as his own allegations reflect, Plaintiff cannot prove an actual violation of the RPCs. He merely asserts in his Amended Complaint that the "filing of patent applications" for non-patentable inventions "*would have necessitated* his violation of" the RPCs. (Am. Cmplt., para. 69) (emphasis added). As such, especially given that he is an attorney, Plaintiff fails to satisfy the first required element of his CEPA claim.

## B. The Authorities Relied upon by Plaintiff Are Insufficient to Support a CEPA Claim

In addition to failing to establish that the alleged conduct actually occurred or was imminent, Plaintiff cannot demonstrate that the conduct complained of falls within one of the enumerated categories under CEPA. Plaintiff alleges that he is proceeding under the following sections (Am. Cmplt., para. 71): *N.J.S.A.* §§ 34:19-3(a)(1) and (a)(2), and *N.J.S.A.* §§ 34:19-3(c)(1), (c)(2), and (c)(3). His alleged actions, however, come within none of these subsections.

Plaintiff does not have a claim based on Section 3(a). He did not allegedly disclose any activity, policy, or practice of L'Oréal USA. Rather, he complained about the patent process that L'Oréal USA patent management already knew about. He also cannot proceed based on allegedly objecting to what he reasonably believed was a "fraudulent or criminal" activity, policy, or practice. Plaintiff's Amended Complaint is bereft of any allegation that could support deception or a misrepresentation, and potentially filing patent applications that Plaintiff considered weak in his professional estimation is in no way criminal. Thus, there are only two provisions warranting further analysis, that the alleged conduct was (i) "in violation of a law, or a rule or regulation promulgated pursuant to law" under *N.J.S.A.* § 34:19-3(c)(1); or (ii) "incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the

environment" under *N.J.S.A.* § 34:19-3(c)(3).  Based on either provision, Plaintiff's CEPA claim fails.

### 1. The RPCs Cited by Plaintiff Are Not Directed to L'Oréal USA's Business

As recent New Jersey Supreme Court precedent makes clear, Plaintiff cannot predicate a CEPA claim under *N.J.S.A.* § 34:19-3(c)(1) on the generic RPC provisions referenced in his Amended Complaint, which do not apply to L'Oréal USA.  In its 2014 decision in *Hitesman*, the New Jersey Supreme Court noted that "our courts have recognized various sources of authority bearing the required substantial nexus to the plaintiff's claim.  In each case, the law, regulation, or other authority held to support a CEPA claim, not only expressed a 'clear mandate of public policy,' but also *identified acceptable and unacceptable practices in the defendant employer's business.*"  218 N.J. at 34 (emphasis added).  The *Hitesman* Court concluded that the American Nursing Association Code of Ethics ("ANA Code") "does not constitute a source of law or other authority bearing a 'substantial nexus' to [the employer's] conduct."  *Id.* at 36.  Specifically, the Court reasoned that the ANA Code "expresses the nursing profession's commitment to sound patient care," but "includes no general standard for infection control in a nursing home, much less specific direction on how [the defendant] should have treated its patients' illnesses."  *Id.* at 36-37 (citations omitted).

Similarly, in *Gibson v. 11 History Lane Operating Co.*, 2014 WL 700124, the Appellate Division recently held that a nurse's disagreement with a long-term care facility's chart-checking policy, which called for her to transcribe another nurse's written physician's order, did not support an objectively reasonable belief that a law, rule, or regulation was violated where the nurse claimed that the ANA Code and New Jersey Administrative Code were implicated. *Id.* at *9-10. The Court explained that "because the ANA Code does not apply to the facility nor does it establish a standard regarding patient care that [defendant] was required to provide its patients, the ANA Code does not adequately define 'improper quality of patient care' to bolster a CEPA claim." *Id.* at *10.

Here, just as in *Hiteman* and *Gibson*, the RPC provisions Plaintiff cites are not directed to L'Oréal USA in its business. Rather, they are directed to Plaintiff in his practice as an attorney. They include no standards governing the filing of patents and no specific direction about how Plaintiff should have prepared any particular patent applications. They only require generally that a practitioner not file frivolous patent applications or knowingly make false or misleading statements of fact or law to a tribunal. 37 CFR §§ 11.301, 11.303. *See also* PA RPC 4.1.[8]

---

[8] Thus, this case is distinguishable from the unreported decision of *Morris v. Greitzer & Locks of New Jersey, LLC*, in which the court allowed a plaintiff-attorney's CEPA claims to go forward based on RPCs. No. L-3784-01, 2009 WL 2525452, at *9 (App. Div. Aug. 20, 2009). The defendants in *Morris* were lawyers and a law firm subject to RPCs, unlike Defendant L'Oréal USA here. Moreover, the RPC at issue in *Morris*, RPC 1.8(g), prohibits a lawyer who represents two or more clients from "participat[ing] in making an aggregate settlement of the claims of or

Indeed, Plaintiff alleges in his Amended Complaint that "whether the subject matter in an invention disclosure is potentially patentable" depends on Plaintiff's "good faith determination." (Am. Cmplt., para. 43). Because the RPCs upon which Plaintiff relies do not specifically identify acceptable and unacceptable practices in L'Oréal USA's business, they are insufficient under *Hitesman* to support a claim that L'Oréal USA's conduct in setting alleged patent quotas violated a law, rule, or regulation.

### 2. The RPCs Cited by Plaintiff Do Not Amount to a Clear Mandate of Public Policy

The RPCs Plaintiff references in his Amended Complaint also do not represent a "clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." *N.J.S.A.* § 34:19-3(c)(3). In *Tartaglia*, the New Jersey Supreme Court allowed a *Pierce* claim to go forward based on New Jersey RPC 1.7(b), related to conflicts of interest, because it is rooted in the basic duties of a lawyer. 197 N.J. at 110. However, the Court declined to consider as a general matter whether RPCs constitute a clear mandate of public policy. *Id.* Other courts have held that professional codes of ethics do not automatically rise to

---

against the clients . . . unless each client gives informed consent after a consultation that shall include disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.'" 2009 WL 2525452, at *9 (App. Div. Aug. 20, 2009). This rule provides a discrete standard for lawyers to follow in the conduct of settlements, in contrast to the RPCs cited by Plaintiffs which do not provide any specific standards governing the filing of patent applications.

the level of a clear mandate of public policy.  For example, in *Pierce*, a doctor refused to continue a medical project because she considered it controversial and believed it presented an unnecessary risk, in violation of the Hippocratic Oath. The New Jersey Supreme Court held that she did not have a viable claim against the employer based on contravention of a clear mandate of public policy:

> In certain instances, a professional code of ethics may contain an expression of public policy. However, not all such sources express a clear mandate of public policy. For example, a code of ethics designed to serve only the interests of a profession or an administrative regulation concerned with technical matters probably would not be sufficient.

*Pierce*, 84 N.J at 72.  *Accord Colon v. Prudential Insurance Co. of America*, 2006 WL 507732 (App. Div. Mar. 3, 2006) ("[A] professional code of ethics does not contain an expression of public policy if it only serves the interest of a profession").

Similarly, in *Warthen v. Toms River Community Memorial Hospital*, a nurse refused to follow orders to provide medical treatment to a terminally ill patient and relied on a provision in the Code for Nurses on the "'respect for human dignity and the uniqueness of the client unrestricted by considerations of social or economic status personal attributes, or the nature of health problems.'"  199 N.J. Super. 18, 26 (App. Div. 1985).  The *Warthen* court rejected her *Pierce* claim, concluding:

> [T]he passage cited by plaintiff defines a standard of conduct beneficial only to the individual nurse and not to the public at large. The overall purpose of the language cited by plaintiff is to preserve

human dignity; however, it should not be at the expense of the patient's life or contrary to the family's wishes.

*Id.* at 27.

In this case, the RPCs cited by Plaintiff define a standard of conduct beneficial only to patent attorneys and Pennsylvania attorneys—not to the public at large. Unlike *Tartaglia*, where the RPC at issue was designed to protect the public by specifying the procedures that need to be followed when an attorney seeks a waiver of a concurrent conflict of interest, the USPTO and Pennsylvania Rules are designed mainly to further the efficient prosecution of patent applications by ensuring non-frivolous patent applications and truthful statements in patent proceedings. It cannot be said that these RPCs represent a "clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." *Cf. N.J.S.A.* § 34:19-3(c)(3). For this additional reason, Plaintiff's CEPA claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant L'Oréal USA, Inc. respectfully requests that the Court dismiss the First Amended Complaint in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

**K&L GATES LLP**
Attorneys for Defendant
L'Oréal USA, Inc.

s/ Christopher R. Carton
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Telephone: (973) 848-4000
Fax: (973) 848-4001
Email: christopher.carton@klgates.com

Dated: July 22, 2015