directive that amounted to an instruction that a bright line annual numerical quota must be [REDACTED] aking the factual averments of the First Amended Complaint as true, L'Oreal fired him for refusing to subordinate his judgment to that of the client. While it is not conceded (as L'Oreal now maintains) that an actual instruction for illegal activity is required to sustain a CEPA claim, in fact it is readily [REDACTED] professional judgment in order to meet the 2014 quota for patent filings.

As pleaded in the First Amended Complaint, the clearance process for a proper patent application involves a number of technical hurdles, the keystone of which is the lawyer's professional determination of whether the invention is patentable. This is no simple process. See Manual of Patent Examining Procedure, USPTO, Chapter 2100, http:/www.USPTO.GOV. The process is generally described in the First Amended Complaint. (See paragraphs 38-42, First Amended Complaint). The determination of whether a patent application is a proper legal, factual and ethical (perforce legal, under the CFR) filing is a complex determination requiring proper scientific grounding for the application's invention, and vetting by the patent attorney, (clearly a legal specialist), who must then decide in his or her professional judgment, whether the application is a proper one. A patent attorney makes such a filing with the weighty responsibilities imposed on him by 37 CFR 11.18. This demands skill, ability, qualifications and experience. It demands independent professional judgment, and cannot be dictated by he

client based on an arbitrary corporate quota for patent filings.

To require, as did L'Oreal, that patents be filed for on a strict set of numbers-driven quota for a particular year, was, in the context of the case at bar, and for purposes of the instant motion, a policy requiring in-house patent lawyers to compromise their own judgment. In such a setting, it need not be shown that the Defendant(s) directed the Plaintiff or anyone else to file

[redacted]

professional judgment. In this regard, the Defendant indeed terminated Mr. Trzaska on December 8, 2014, some 24 calendar days before the quota deadline, when patent numbers were down. This occurred after several rounds of protest by Trzaska (First Amended Complaint

This is not a case of an isolated objection to policy by an outlier employee **See Exhibit A.** This communication is pleaded as factual background in the Second Amended Complaint. This statement by another internal patent counsel at L'Oreal establishes the following: the quota

[redacted]

professional judgment of Plaintiff (Head of Patents) and its patent attorneys, in violation of 37 CFR 11.201. This provision <u>mandates</u> that patent lawyers exercise that independent professional judgment. The First Amended Complaint and its Exhibits establishes that the L'Oreal patent quota policy, as its deadline approached in the final quarter of 2014, amounted to no less than a direct instruction from the Company to Trzaska and its other patent lawyers to violate 37 CFR 11.201.

It is undisputed that Mr. Trzaska was fired, on December 8, 2014, after he voiced his

11

complaints about this policy. First Amended Complaint, paragraphs 57-59; 64).

L'Oreal's implementation of its purely numbers and date-driven quota system, <u>standing alone</u>, was a point blank effort by the client, L'Oreal USA, Inc., to require Trzaska to violate his obligations under the USPTO. 37 C.F.R. 11.201. The provisions of 37 C.F.R. 11et seq. which govern the practice of attorneys before the Patent Office are mandatory and not discretionary. They are not mere "guidelines" or ethical "suggestions", but are federal law which binds all licensed patent attorneys. (<u>Contrast</u> these to the private code of conduct of the American Nursing Association (ANA) which was rejected as a proper CEPA predicate in <u>Hitesman v. Bridgeway, Inc.</u>, 218 N.J. 8 (2014)). The above CFR provision provides in mandatory language, that an attorney, while representing a client "shall exercise independent professional judgement and render candid advice." The existence of the quota program, in the setting described in the First Amended Complaint, required Plaintiff to subordinate his independent professional judgment on whether inventions were patent worthy (ultimately, a pure exercise of expert judgment by the patent attorney) to the corporate needs and mandates of the day. Plaintiff was fired when he refused on professional grounds to participate in fulfilling the 2014 quota,

**Complaint**.

The regulations governing practice before the USPTO (hereinafter "the Office") also

12

provide, in relevant part, that practice before the Office includes not just record filings in the USPTO, but also the consultation with or providing of advice to a client *in contemplation of filing*. In this regard, 37 C.F.R. Section 11.5(1)b provides, in relevant part, as follows:

> (1) *Practice before the Office in patent matters.* Practice before the Office in patent matters includes, but is not limited to, preparing and prosecuting any patent application, consulting with or giving advice to a client in contemplation of filing a patent application, or other document with the Office. ***

Practice before the USPTO includes, by definition, private consultations with clients. Thus, to the extent that Mr. Trzaska declined to participate in a program which imposed mandatory numerical quotas upon him and his patent attorney colleagues, he was then and there directly within the scope of his practice before the USPTO. He was bound by those professional rules even before making a filing with the Office.

Plaintiff's privilege to practice before the USPTO and his conduct in representing parties in patent matters, are unquestionably governed by the USPTO rules. The USPTO is a component of the U.S. Department of Commerce. These rules govern all patent attorneys admitted to practice before the USPTO. They are not an internal matter governed by L'Oreal's corporate policy of the day. These regulations are federal law, and are not mere ethical guidelines or suggestions. They are directly relevant to the inquiry before the Court.

L'Oreal, a cosmetics concern with a world-wide following, possesses rights to numerous US patents. Its involvement in the intellectual property field by way of advancing and protecting its IP interests prompted it to hire in house patent attorneys. It is clear that provisions governing attorney conduct are a relevant and real part of its business. It should not to be heard to say that a corporation which hires staff attorneys and which is a regular filer of patent applications with the

13