USPTO can turn a blind eye to the rules by which its lawyers are required to conduct themselves.

### D. PRACTICE BEFORE THE PATENT OFFICE INCLUDES PRE-FILING CONSULTATIONS WITH CLIENT

Subpart B the CFR, Title 37, Section 11.5(1) specifically defines practice before the USPTO as follows:

> (1) *Practice before the Office in patent matters.* Practice before the Office in patent matters includes, but is not limited to, preparing and prosecuting any patent application, **consulting with or giving advice in contemplation of filing a patent application or other document with the Office**, drafting the specification or claims of a patent application;
>
> \*\*\*

(Emphasis added).

Thus, even pre-filing consultations with a client who contemplates filing a patent application constitute practice before the USPTO. Before a patent application is filed, a patent attorney such as Plaintiff who consults on a patent matter is already practicing before the USPTO by definition of the regulations. Thus, such an attorney's conduct is governed of necessity by these rules of professional conduct.

### E. ADDITIONAL RESPONSIBILITIES OF ATTORNEYS PRACTICING BEFORE USPTO

In addition to Section 11.201, there are other USPTO Rules which are relevant to the Court's inquiry on this motion. These are found in Subpart D of Title 37 CFR 11, and include the following:

**11.102(d):**

14

A practitioner shall not counsel a client to engage , or assist a client, in conduct that the practitioner knows is criminal or fraudulent \*\*\*

**11.301 Meritorious claims and contentions.**

A practitioner shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law.

**11.303 Candor toward the tribunal.**

(a) A practitioner shall not knowingly:

(1) Make a false statement of fact or law to a tribunal or fail to correct as false statement of material fact or law previously made to the tribunal to the practitioner.

All of these provisions are implicated in the case at bar.

There is a clear and well-pleaded contention that Plaintiff was fired because of his objections to the quota as it was being enforced in 2014. Further, it is obviously inferable L'Oreal fired him because of his objection to the policy and its implementation in 2014. (See paragraphs 57, First Amended Complaint). The timing of his discharge on December 8, 2014 speaks loudly: the patent quota was short of its mark, and only days remained in 2014. This occurred only days after a confrontation with Thomas Sarakattsanis, L'Oreal USA's General Counsel, providing Trzaska with the option of adhering to the quota or taking a severance package (paragraphs 59-62) and after his confrontation with Human Resources advising him to take a severance package or "get back to work.: (First Amended Complaint, paragraph, 59).

Taking the facts pleaded in the First Amended Complaint as true, Plaintiff has pleaded an actionable claim under CEPA. All elements of a CEPA claim are present, under <u>Dzwonar v.</u>

McDevitt, 828 A.2d 893 (N.J., 1989), in which Court held as follows:

> A plaintiff who brings a cause of action pursuant to N.J.S.A. 34:19-3c must demonstrate that: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, regulation promulgated pursuant to law, or clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> Ibid. At 900.

Mr. Trzaska had, at a minimum, a reasonable belief that the conduct of L'Oreal was a present order to him to violate Section 11.201.

### F. SPECIFIC USPTO REQUIREMENTS FOR ATTORNEYS WHO FILE MATERIALS WITH OFFICE

Additionally, 37 CFR 11.18 places special responsibilities on all admitted Patent Attorneys who file papers with the USPTO. These are rough counterparts to those imposed upon federal practitioners under FRCP 11. However, they are even more strict, as they make specific reference to the U.S. Criminal Code and specifically provide for potential <u>criminal</u> penalties for lawyers who violate section 11.18. This section provides in relevant part as follows:

> (b) By presenting to the Office or hearing officer in a disciplinary proceeding (whether by signing, filing, submitting, or later advocating) any paper, the party representing such paper, whether a practitioner or non-practitioner, is certifying that –
>
> (1) all statements made therein of the party's own knowledge are true, all statements made therein on information and belief are believed to be true, and all statements made therein are made with the knowledge that whoever, in any matter within the jurisdiction of the Office, knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, or knowingly and wilfully makes or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry, shall be subject to the penalties set forth under 18 U.S.C. 1001 and any other applicable criminal statute, and violations of the provisions of this section may jeopardize the probative value of the paper; and

(2) To the best of the party's knowledge, information and belief, formed after an inquiry reasonable under the circumstances

(I) the paper is not being presented for any improper purpose, such as to harass someone or to cause unnecessary delay or needless increase in the cost of any proceeding before the Office;

(ii) The other legal contentions therein are warranted by existing law or by a non-frivolous for the extension, modification, or reversal of existing law or the establishment of new law;

(iii) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(iv) The denials of factual contentions are warranted on the evidence or if specifically so identified are reasonably based on a lack of information or belief.

( c ) violations of any of paragraphs (b)(2)(I) through (iv) of this section are, after notice and reasonable opportunity to respond, subject to such sanctions or actions as deemed appropriate by the USPTO Director, which may include, but are not limited to, any combination of –

(1) striking the offending paper;

(2) referring a practitioner's conduct to the Director of Enrollment and Discipline for appropriate action;

(3) Precluding the party or practitioner from submitting a paper or presenting or contesting an issue

(4) Affecting the weight given to the offending paper; or

(5) terminating the proceedings in the Office.

(d) Any practitioner violating the provisions of this section may also be subject to disciplinary action.

The filing of any paper or correspondence in the USPTO carries with it a responsibility that the filing be based on fact. Violations of 37 CFR 11.18 place a practitioner at risk, inter alia,

of disbarment, lesser discipline, and possible criminal prosecution for a federal felony UNDER 18 U.S.C. 1001. Participation in L'Oreal's quota-based policy raised the serious concerns by Plaintiff that the L'Oreal quota as ordered could require him to violate these (and other) USPTO Rules, thereby jeopardizing his professional license before the USPTO.

It is submitted that as a matter of policy, and in light of the liberal remedial purposes underlying CEPA, neither the New Jersey Legislature nor its Courts require that in order for a person such as this Plaintiff (or anyone ) to perfect a CEPA claim, they must first break the law themselves. This applies with special vigor to a lawyer, who is sworn to uphold the law and is an officer of the Court.

Additionally, filing a false paper with the USPTO carries with it a criminal exposure under 18 U.S.C. 1001, violation of which is a federal felony providing a sentence of confinement of up to five years.

Plaintiff objected to the policy for these reasons. CEPA does not require him to show, to support his cause of action, that he was forced to file a specific false claim before the USPTO: if he believed in good faith that L'Oreal's order that he file such a paper to meet its 2014 quota was imminent, and he objected to the policy for this reason, he has an actionable CEPA claim.
As the Court held in <u>Blackburn v. United Parcel Service</u> , 3 F. Supp. 2d 504 (D., N.J., 1998):

> CEPA does not require that the employee subjectively believe that certain activities have taken place or are about to take place. In order for an employee's belief to be considered "reasonable," that belief must me such that a reasonable lay person would conclude that illegal activity was going on or **was at least imminent**.

<u>Ibid</u>. at 515 ( citations and internal quotations omitted). (Emphasis added).

Plaintiff herein had actual knowledge that the quota system was a point-blank effort by L'Oreal

18

to substitute its own judgment on USPTO filings (as to which professional judgments on legitimacy are within the special expertise of a patent attorney, and the filing of which place him under particular civil and potentially criminal scrutiny) for that of its staff patent counsel. Attorney Rocha herself voiced specific written concern about the Company's interference with professional legal judgment <u>and</u> risks to patent attorney licensure, because of the Company's 2014 quota program. Clearly the First Amended Complaint establishes that Plaintiff had a reasonable belief that solicitation by the Company of a disciplinary violation or violations was imminent in the final quarter of 2014.

## G. CEPA DOES NOT REQUIRE AN EMPLOYEE TO COMMIT A CRIME OR ENGAGE IN OTHER MISCONDUCT TO PERFECT A STATUTORY WHISTLEBLOWER CLAIM.

The Court should reject L'Oreal's position that in order for there to be a CEPA claim, the Plaintiff must have been instructed specifically to file a false patent application, or actually to have filed one: this is not a requirement of the Act. The Act is remedial in nature and not intended to dictate such an anomalous result. In this regard, the essential requirements of the Act, as laid down in the case of <u>Dzwonar v. McDevitt</u>, 177 N.J. 451 (2003) are as follows:

> N.J.S.A. 34:19-3c does not require a plaintiff to show that a law, rule, regulation or clear mandate of public policy actually would be violated if all the facts he or she alleges are true. Instead, the plaintiff must set forth facts that would support and objectively reasonable that a violation has occurred. In other words, when a defendant requests that the trial court determine as a mater of law that a plaintiff's belief was not objectively reasonable, the trial court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff. If the trial court so finds, the jury then must determine whether the plaintiff actually held such a belief and, if so, whether the at belief was objectively reasonable.

19

Ibid. At 464.

It is anomalous to suggest that in order for an employee to have a CEPA claim, he must first break the law, by acquiescing in his Employer's suggestion or order that he engage in illegal or fraudulent activity. This is of course not the law. Indeed, Dwoznar in essence holds that an employees' refusal to participate in imminent illegal activity, or to engage in a course of conduct leading to such, need not have been given a direct order to engage in illegal conduct. Under CEPA, where the illegal activity was either occurring or about to occur, the objecting employee who has refused to participate in the activity has a CEPA claim where there is employer retaliation.

Applying this aspect of the holding of Dzwonar to the case at bar, Plaintiff only need establish a good faith belief that if he adhered to the quota policy, the law "would be violated." Plaintiff has pleaded exactly that: his good faith belief that adherence to the pure, time and numbers-driven patent filing quota policy of L'Oreal would have necessitated a breach of the law as to the requirement of a good faith filing under 37 CFR 11.18.

Further, considering 11.102 (the USPTO mandate that an attorney exercise independent professional judgment) along with the CFR rule that counseling a client on a patent matter is itself practice before the USPTO, it is clear that even in the absence of a point blank order from L'Oreal to file a specific baseless patent application withe Office, L'Oreal's instruction that a quota must be met alone makes out a case L'Oreal directly solicited a violation of 37 CFR 11.102 from the Plaintiff. This is particularly so where the First Amended Complaint provides a well-pleaded factual background that there were not enough patentable inventions being developed, and indeed that in late 2014 unworthy invention proposals were being re-cycled.

Moreover, in applying CEPA, courts have not held that there need be an <u>actual</u> violation of a law, policy, or regulation: this District Court, by the Honorable Judge Barry, opined in <u>Blackburn v. UPS</u>, 3 F. Supp. 3d 504 (D., NJ, 1998) that in a CEPA setting " in order for an employee's belief to be considered 'reasonable,' that belief must be such that 'a reasonable lay person would conclude that illegal activity was going on' or , at the very least, is imminent." <u>Ibid</u>. at

### H. NO COMMON LAW CLAIM IS PLEADED: *PIERCE v. ORTHO PHARMACEUTICALS CORP.* IS INAPPOSITE

Defendant places reliance on <u>Pierce v. Ortho Pharmaceuticals Corp</u>., 84 N.J. 58 (1980) and on <u>Tartaglia v. UBS PaineWebber, Inc</u>. 197 N.J. 81 (2008). Neither of these is a CEPA case. These are both cases in which Plaintiffs filed common law actions for wrongful discharge, and not statutory claims. <u>Tartaglia</u> is wholly inapposite for this reason. Therein the Court held that:

> Both because attorneys should be knowedgeable about the RPCs, and because they have ain independent obligation to report violations to the appropriate authorities,, see RPC 8.3, we impose upon them a higher standard in order to maintain a <u>Pierce</u> claim founded on a public policy embodied in an RPC.

<u>Ibid</u>. at 112.

Precisely because <u>Tartaglia</u> was a pure common law claim, its holding does not apply to CEPA, which is a creature of statute. Moreover, The New Jersey Supreme Court has held, in a related vein, that CEPA recognizes but <u>one</u> class of employees under the statute, and that CEPA rights do not, as a general proposition, vary depending on one's status. In <u>Lippman v. Ethicon</u>, <u>supra</u>, a unanimous Supreme Court held, on a plain reading of CEPA, that:

> By its very terms, the statutory cause of action created by CEPA applies equally to all employees. There is no evidence of legislative intent to have the Act operate any other way.

21

2015 N.J. LEXIS 791, _____ (2015).

Just as the Court refused to read an exception into CEPA for watchdog employees, this Court should not read into CEPA a higher burden for lawyers, merely because they are presumed to be learned in the law. It is the policy of New Jersey that all employees should have the benefit of CEPA protection.

Moreover, even if, <u>arguendo,</u> there is a requirement of an actual, ongoing, real time violation of law which the employer is requiring, it is met in this case by L'Oreal's attempt to instruct its patent house counsel to subordinate their professional judgment to the business concerns of the corporation.

## CONCLUSION

For the above reasons, Plaintiff requests that the instant Motion be denied.

Respectfully submitted,

*/s/ Gerard J. Jackson*

Date: 8/3/15

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| STEVEN J. TRZASKA | |
| Plaintiff | Civil Action No. 2:15-cv-02713-SDW-SCM |
| v. | |
| L'OREAL USA, INC., ET AL | ORDER DENYING MOTION TO SEAL |
| Defendants | |

THIS MATTER having come before the Court upon the Motion of Defendant L'Oreal, USA, Inc. for Dismissal of Plaintiff's First Amended Complaint under F.R.C.P. 12(b)(6), and the Plaintiff's Opposition to said Motion,

IT IS on this _____ day of _____, 2015,

ORDERED that the said Motion is hereby DENIED.

BY THE COURT:

_____
Honorable Steven C. Mannion, U.S.M.J.