> DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 288 (3d Cir., 1981). (emphasis added).

*DeJames* is persuasive evidence that the Third Circuit, if called upon to resolve the specific issue of whether postal channels are proper for service of initial process, would hold that they are in fact allowed by the Convention. Of particular import here is the Third Circuit's reference to the notion of a receiving nation's objection to the method of service used: in this regard, the only service provision set forth in the Convention where a signatory is invited to object to the mode of service is that set forth in Article 10(a), the postal option. Neither the Convention's Central Authority Articles (2-7) nor its consular diplomatic (Article 8) provide an "opt out" mechanism. Thus, it is difficult to conclude that the Third Circuit, the language it used in DeJames, could have been addressing anything other than the postal channel under Article 10(a).

Central to the disagreement between Bankston and Ackermann on the issue of whether postal channels are a proper method of service of process is the Convention's use of the word "send" in Article 10(a) in lieu of "serve." The Eighth Circuit, in Bankston, reasoned that as the Convention's drafters used the words "serve" or "service" when referring to initial process, that the use of the word "send" in Article 10(a) must be limited to suit papers secondary to those used to initiate a lawsuit. By contrast, the Second Circuit, in Ackermann, held on this point that service by mail does not violate the Hague Convention, and that the use of the word "send" in Article 10(a) and "service" on other sections of the Convention was merely "careless drafting." Ackermann at 839 (quoting 1B. Ristau, International Judicial Assistance, Civil and Commercial, Section 4-28 at 165-67). The U.S. Government's Executive Branch has publicly stated that postal channels should be considered proper for service: the United States Department of State,

5

Office of the Legal Adviser, by Alan J. Kreczko, Deputy Legal Adviser, has publicly opined in an oft-cited opinion letter, that the Bankston opinion is incorrectly decided, to the extent that it holds that Article 10(a) does not permit service via mail:

> We therefore believe that the decision of the Court of Appeals in Bankston is incorrect to the extent that it suggests that the Hague Convention does not permit as a method of service the sending of a copy of a summons and complaint by registered mail to a defendant in a foreign country.

**Kreczko letter, at p. 3 (unnumbered), second full paragraph (Exhibit B hereto).**
*Cited with approval in* R. Griggs Group Limited v. Filanto Spa, 920 F. Supp. 1100 (D.-Nevada, 1996); Trump Taj Mahal Associates v. Hotel Services, Inc., 183 F.R.D. 173, 176-179 (D-NJ, 1998);

It is submitted that as the language of Article 10(a) is plain and clear, there is no need to interpret it. However, if interpretation is needed, the Supreme Court has held in Volkswagenwerk, supra, that "treaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." Id. at 699. Herein the practical import of the language is that service mail was intended. Indeed, in this regard, after decades of practice under the Convention (which was concluded in 1965 and which the U.S. ratified in 1969) the Hague Conference on Private International Law (a group of signatory nations constituting a Permanent Bureau on the Hague Convention instantly under discussion and Hague related treaties on international judicial matters), crisply opined in 2003 that the term "send" in article 10(a) is to be understood as meaning "service" through postal channels. This is confirmed in a report by the Special Commission ("SC") of the Hague Conference, the

conclusions of which were published in 2003. The Commission stated in relevant part that:

*Alternate Channels of transmission*

55. The SC reaffirmed its clear understanding that the term "send" in Article 10(a) is to be understood as meaning "service" through postal channels.

Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Hague Apostille, Evidence and Service Conventions (28 October to 4 November 2003).

(**Exhibit C** – excerpts).

There is a division of authority on the postal channel for service of original process at the District Court level within the Third Circuit. See, e.g., Raffa v. Nissan Motor Co.,141 F.R.D. 45 (E.D., Pa, 19910 (relied upon by Defendant at pp. 7, 9, 11 of its Memorandum, holding that postal service is not allowed). By contrast, the following cases (all from the District of New Jersey) follow Ackermann, and hold that the postal channel is indeed a proper method for service of initial process: Trump Taj Mahal Associates v. Hotel Services, Inc., 183 F.R.D. 173, 176-179 (D-NJ, 1998); Eli Lilly & Co. v. Roussel Corp., 23 F. Supp.2d 460, 473 (D-NJ, 1998); Rogers v. Kishara, 2006 U.S. District LEXIS 74870 (D-NJ, 2006): EOI Corp. Medical Marketing Ltd., 172 F.R.D. 133, 142 ("Article 10(a) of the Hague Convention empowers litigants to effectuate service of process through postal channels, provided that the State of destination does not object.").

While there are at least two cases from the Eastern District of Pennsylvania which take the Bankston view, there is authority at the District Court level in the Middle District of Pennsylvania which follows Ackermann. See Mitchell v. Theriault, 516 F. Supp. 2d 450, 455 (M.D., Pa., 2007).

Plaintiff submits that by far the better reasoned view is that the postal channel is a proper method of service abroad, (where, as here, France, the receiving country, does not object) for these reasons:

1) The plain language of Article 10(a) provides for a postal channel for service;

2) The phrase "to send judicial documents" in the context of the Convention, which is after all a convention principally concerned with initial service of process, should be interpreted to mean initial process;

3) The intent of the participating nations as set forth in the Convention's preamble was to simplify and not complicate service of judicial documents:

> Desiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time,
>
> [d]esiring to improve the organisation of mutual judicial assistance for the purpose by simplifying and expediting the procedure

4) the mode of providing a destination state an opt-out mechanism for postal channels evidences the intent that the participating nations were agreeing to use of postal channels for service of process and not the secondary papers in a lawsuit (else why have an opt-out mechanism?).

5) the U.S. Department of State, our Government's lead agency on treaties and international matters, has officially expressed the public view that the Bankston case is incorrectly decided, and that postal channels are proper means where the destination state does not object. See Kreczko letter, supra.

6) The Hague Conference on Private International Law, a group of signatory nations

constituting a Permanent Bureau on the Hague Convention and related Treaties, has crisply opined that the term "send" in article 10(a) is to be understood as meaning "service" through postal channels. This is confirmed in a report by the Special Commission ("SC") of the Hague Conference, the conclusions of which were published in 2003. The SC stated in relevant part that:

> *Alternate Channels of transmission*
>
> 55. The SC reaffirmed its clear understanding that the term "send" in Article 10(a) is to be understood as meaning "service" through postal channels.
>
> <u>Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Hague Apostille, Evidence and Service Conventions</u> (28 October to 4 November 2003).
>
> (**Exhibit C** – excerpts).

7) Postal service is calculated to provide notice to the foreign Defendant, meets due process requirements, and in the case at bar in fact did so: L'Oreal, S.A. obviously received the mailing on May 26, 2015, and acted quickly to engage counsel in this litigation to protect its interests.

### B. HAGUE CONVENTION DOES NOT REQUIRE TRANSLATION OF LEGAL DOCUMENTS WHERE SERVICE IS MADE BY MAIL

Article 5 of the Convention (providing for service by a Central Authority) provides that "the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages o the State addressed." There is no such stated requirement for postal transmission under the Convention. This is so by an examination of

9

Article 10, which is silent on any translation issue. It is submitted that if the drafters saw a need for translation in the Central Authority context, the fact that they omitted any reference to same in Article 10(a) should be seen as an intent to omit any such requirement. The Practical Handbook on the Operation of the Hague Service Convention (HCCH) ("Practical Handbook") confirms this, by stating that "a grammatical and systematic interpretation of Article 5 leads to the conclusion that a translation of the document to be served, and *a fortiori* of its attachments, is not required for service through postal channels." Ibid., p. 80 (paragraph 225). (emphasis in original). U.S. case law is in accord with this view: See, e.g., Lemme v. Wine of Japan Import, 631 F. Supp.456, 464 (E.D., NY, 1986); McClenon v. Nissan Motor Corp., 726 F. Supp. 822 (N.D., Fla., 1989).

The translation requirement simply does not exist for postal service. Further, there is no due process concern here: even if, arguendo, there were a translation requirement, this Defendant obviously understood the document in English: it acted promptly to engage counsel after service. Counsel acted a mere 14 days after service to seek an extension to plead, as appears by the record. Moreover, it appears by certain documents of record (i.e., Exhibits to the First Amended Complaint, currently under temporary seal) that key France-based personnel of the Defendant readily understood and communicated in English.

Finally, the Court can recognize that the moving Defendant, while a French corporation, is one with a global presence, and a substantial presence in the United States, an English-speaking country. Further, the Defendant has volunteered, via an Exhibit to its current motion, that it publishes its Annual Report in English.

Service of documents in English was not required under the Hague Convention, and

certainly did not offend any notion of due process.

### C. ORDINARY INTERNATIONAL MAIL WAS SUFFICIENT TO PROVIDE NOTICE AND AN OPPORTUNITY TO BE HEARD

The Convention permits service of initial process by postal channels, but is silent on whether these need to include mail requiring a signed receipt. The HCCH Practical Handbook, supra, sates that "[t]here is no doubt that the reference to postal channels [in Article 10(a)] includes the sending of letters by ordinary mail, registered post and registered post with notification of receipt." (Ibid., at p. XXXII (Item 26) . Herein, the mail form used did not have a return receipt. However, the USPS did confirm actual delivery, and the moving Defendant has admitted receipt.

### D. NO REQUIREMENT OF SERVICE OR MAIL TRANSMISSION BY CLERK OF COURT

There is no requirement under the Hague Convention of transmission of service documents by the Clerk of the U.S. District Court, under the instant (postal) mode of transmission. Neither does the Federal Rule 4, correctly read, have such a requirement.

FRCP 4(f)(2), upon which Defendant relies, is fundamentally inapposite: this is because the service herein was, as a threshold matter, governed by FRCP Rule 4(f)(1), which provides as follows:

> Unless federal law provides otherwise, an individual . . . May be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of

11

Judicial and extrajudicial Documents;

Instantly, the Defendant was served by an internationally agreed means of service, i.e., the postal channel, as set forth in the Hague Convention at Article 10(a), and discussed at length <u>supra</u> in this Brief. Clearly, this meets the requirement of the above language of the Rule. Additionally, the postal channel, both generally and as shown on the facts of the case at bar, was reasonably calculated to give notice to this Defendant, and in fact did so.

Subdivision (f)(2) of FRCP 4 (upon which Defendant relies as requiring the suit papers to have been sent by the Clerk of the Court) is thus inapposite, as it is only operative "if there is no internationally agreed means." Herein there obviously was such a means, i.e., postal transmission, which was used, with notice which was calculated to – and did – inform Defendant of the case sued upon.

Service herein met the spirit and letter of the Hague Convention, and also that of FRCP 4.

To such extent, <u>arguendo</u>, as the Court may see that FRCP(f)(2) is material, it is conceded that the Clerk did not transmit the process. However, if material, this is a minor ministerial flaw in a case where the Defendant actually had notice, and where counsel for Plaintiff, a Court Officer, forwarded it. If FRCP(f)(2) is pertinent at all, the Court should view counsel's mailing as the functional equivalent of mailing by the District Court Clerk. The Court has the authority to disregard this ministerial shortcoming under FRCP 1, which provides that the Federal Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

## CONCLUSION

For these reasons, it is requested that the instant Motion be denied.

Respectfully submitted,

*/s/ Gerard J. Jackson*

Date: 8/27/15

GERARD J. JACKSON

13

# CERTIFICATION OF SERVICE

I hereby certify that on this date I served a true and correct copy of the Plaintiff's Memorandum of Law in Opposition to Motion of Defendant L'Oreal, S.A. to Dismiss Complaint of Plaintiff on Counsel for Defendants L'Oreal USA, Inc. and L'Oreal, S.A. via ECF service on counsel, whose name and address follow:

    Christopher Carton, Esquire
    K & L Gates LLP
    One Newark Center
    10th Floor
    Newark, NJ 07102

    Eric A. Savage
    Littler Mendelson, P.C.
    One Newark Center, Eighth Floor
    Newark, NJ 07102

    /s/ Gerard J. Jackson
    _____
    GERARD J. JACKSON

DATE: 8/27/15