**EXHIBIT C**

Légalisation / Preuves / Notification
Legalisation / Evidence / Service



Octobre / novembre 2003
October / November 2003

**CONCLUSIONS ET RECOMMANDATIONS ADOPTÉES PAR LA COMMISSION SPÉCIALE SUR LE FONCTIONNEMENT PRATIQUE DES CONVENTIONS APOSTILLE, OBTENTION DES PREUVES ET NOTIFICATION**

*(28 octobre au 4 novembre 2003)*

\* \* \*

**CONCLUSIONS AND RECOMMENDATIONS ADOPTED BY THE SPECIAL COMMISSIONON THE PRACTICAL OPERATION OF THE HAGUE APOSTILLE, EVIDENCE AND SERVICE CONVENTIONS**

*(28 October to 4 November 2003)*

Permanent Bureau | *Bureau Permanent*
6, Scheveningseweg   2517 KT The Hague | *La Haye*  The Netherlands | *Pays-Bas*
telephone | *téléphone* +31 (0)70 363 3303  fax | *télécopieur* +31 (0)70 360 4867
e-mail | *courriel* secretariat@hcch.net   website | *site internet* http://www.hcch.net

**CONCLUSIONS ET RECOMMANDATIONS ADOPTEES PAR LA COMMISSION SPECIALE SUR LE FONCTIONNEMENT PRATIQUE DES CONVENTIONS APOSTILLE, OBTENTION DES PREUVES ET NOTIFICATION**

*(28 octobre au 4 novembre 2003)*

* * *

**CONCLUSIONS AND RECOMMENDATIONS ADOPTED BY THE SPECIAL COMMISSION ON THE PRACTICAL OPERATION OF THE HAGUE APOSTILLE, EVIDENCE AND SERVICE CONVENTIONS**

*(28 October to 4 November 2003)*

# Conclusions and Recommendations
## of the Special Commission on the practical operation
## of The Hague Apostille, Evidence and Service Conventions
### (28 October to 4 November 2003)

1. A Special Commission met in The Hague from 28 October to 4 November 2003 to review the practical operation of the Hague Conventions of *5 October 1961 Abolishing the Requirement of Legalisation for Foreign Public Documents*, of *15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, and of *18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*. The Special Commission, which was attended by 116 delegates representing 57 Member States, States party to one or more Convention under review, and observers, unanimously approved the following conclusions and recommendations:

## I.   GENERAL COMMENTS

2. The Special Commission (SC) noted and emphasised the *continued importance* of the Hague Apostille, Evidence and Service Conventions.

3. In light of the value of the continued monitoring of the Conventions' practical operation, the need to promote uniform interpretation, foster mutual confidence and enhance the mutual benefits for States party to the Convention to exchange their respective experiences in operating the Conventions, as well as to promote the benefits of the Conventions to non-party States, the SC recommended to have *more frequent meetings* to review the practical operation of the Apostille, Evidence and Service Conventions. The Special Commission recommended that review meetings on the practical operation of these three Conventions be held *every five years*, subject to the availability of the additional resources needed. Also, consideration should be given to the possibility of reviewing the practical operation of the *Hague Convention of 25 October 1980 on International Access to Justice*.

4. The SC emphasised that the Apostille, Evidence and Service Conventions operate in an environment which is subject to important *technical developments*. Although this evolution could not be foreseen at the time of the adoption of the three Conventions, the SC underlined that modern technologies are an integral part of today's society and their usage a matter of fact. In this respect, the SC noted that the spirit and letter of the Conventions do not constitute an obstacle to the usage of modern technology and that their application and operation can be further improved by relying on such technologies. The Workshop held prior to the SC (*i.e.*, on 27 October 2003) clearly revealed the means, possibilities and advantages of using modern technologies in subject matters falling within the scope of the Conventions[1].

---

[1] The Workshop was structured around the following presentations: MR THOMAS GOTTWALD & MR PETER FRANK (Federal Ministry of Justice, Austria): *eJustice – Datahighway to Austrian Courts – Electronic Legal Communication (ELC) – Transmission of Legal Documents*; MS JULIE NIND (Ministry of Justice, New Zealand): *Taking evidence by video link across Tasman*; MS DORY MCKENZIE & MR JAMES MASON (Foreign and Commonwealth Office, United Kingdom): *The issuance of Apostilles by the Foreign and Commonwealth Office*; MR OZIE STALLWORTH & MR KEVIN MENDELSON (National Notary Association, United States of America): *enjoa – The Electronic Notary Journal of Official Acts*.

54. The SC invited States party to make available to the Permanent Bureau all relevant information relating to costs, the availability and modalities of service by delivery under Article 5(2), as well as information relating to the alternative modes of transmission under the Convention, for posting on the Conference's website.

*Alternative channels of transmission*

55. The SC reaffirmed its clear understanding that the term "send" in Article 10(a) is to be understood as meaning "service" through postal channels.

56. The SC considered the increasing use of private courier services for the expeditious transmission of documents in a variety of business settings and heard reports that such couriers have been used to serve process under Article 10(a) of the Convention. In light of that, the SC concluded that for the purposes of Article 10(a) the use of a private courier was the equivalent of the postal channel.

57. The SC noted the further clarification submitted by the Japanese delegation on its position regarding Article 10(a):

> "Japan has not declared that it objects to the sending of judicial documents, by postal channels, directly to addressees in Japan. As the representative of Japan made clear at the Special Commission of April 1989 on the practical operation of the Service and Evidence Conventions, Japan does not consider that the use of postal channels for sending judicial documents to persons in Japan constitutes an infringement of its sovereign power.
> Nevertheless, as the representative also indicated, the absence of a formal objection does not imply that the sending of judicial documents by postal channels to addressees in Japan is always considered valid service in Japan. In fact, sending documents by such a method would not be deemed valid service in Japan in circumstances where the rights of the addressee were not respected."

58. The SC noted that the UK confirmed its position expressed at the Special Commission meeting of 1989, indicating its preference for the use of direct service through English solicitors on residents of England and Wales.

*Use of IT technology*

59. The SC stressed that the operation of the Convention was to be considered in light of a business environment in which use of modern technology was now all pervasive, and that the electronic transmission of judicial communications is a growing part of that environment. In this light, conclusions could be reached as follows:

60. The Convention does not on its terms prevent or prescribe the use of modern technologies to assist in further improving its operation.

61. The Convention does not on its terms deal with internal procedures but there is a link between domestic law systems and the functioning of the Convention.

62. It can be concluded, however, that the transmission of documents internationally for the purposes of the Convention can and should be undertaken by IT-Business methods including e-mail; this is already happening and the SC recommends that States party to the Convention explore all ways in which they can use modern technology for this purpose.